(No. 94231.—

MEL VITRO *et al.*, Indiv. and as Parents and Guardians of Dorothy Vitro, a Minor, Appellants, v. ALICE S. MIHELCIC, M.D., *et al.*, Appellees.

*Opinion filed January 23, 2004.—Rehearing denied March 22, 2004.*

FITZGERALD, J., joined by KILBRIDE and RARICK, JJ., dissenting.

Roger D. Rudich, of Rudich, Rubens & Taradji, of Chicago, and Peter A. Guerrero, of Roush, McCracken,

Guerrero, Miller & Ortega, of Phoenix, Arizona, for appellants.

Cunningham, Meyer & Vedrine, of Wheaton (William F. Cunningham and Robert L. Larsen, of counsel), for appellees.

CHIEF JUSTICE McMORROW delivered the opinion of the court:

The question presented in this appeal is whether a parent may recover for loss of the society and companionship of a child who is nonfatally injured. Under Illinois law, such a claim may be brought in a wrongful-death action. *Bullard v. Barnes*, 102 Ill. 2d 505 (1984). However, in *Dralle v. Ruder*, 124 Ill. 2d 61 (1988), we declined to extend the filial society cause of action to those situations where the child is nonfatally injured. For the reasons set forth below, we adhere to our decision in *Dralle* and refrain from enlarging the scope of liability to encompass claims where the child is nonfatally injured.

## BACKGROUND

Plaintiffs Mel Vitro and Sabrina Short Vitro, acting individually and as parents and guardians of their minor daughter, Dorothy, filed a medical malpractice action in the circuit court of Du Page County against defendants Alice S. Mihelcic, M.D., and Naperville Associates in Obstetrics and Gynecology, Ltd. (Naperville Associates). The complaint alleged that Mihelcic, while in the course and scope of her employment with Naperville Associates, negligently managed Sabrina's labor and the delivery of Dorothy, thereby causing Dorothy severe brain damage. The complaint further alleged that, as a result of her neurological injuries, Dorothy will suffer cognitive deficits and physical disabilities for the rest of her life. Count I of the three-count complaint sought

damages for Dorothy's injuries, and the second count, which was brought pursuant to the Rights of Married Persons Act (750 ILCS 65/15 (West 2000)), sought compensation for medical and caretaking expenses incurred by the parents. In count III, the only count at issue in this appeal, plaintiffs alleged a loss of filial consortium with their daughter as a result of her injuries, and sought damages for this disruption of the family relationship.

Defendants moved to dismiss count III pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)) on the ground that Illinois does not recognize such a claim. Defendants pointed to *Dralle* and argued that, under this decision, parents may not claim loss of consortium damages for nonfatal injuries to a child. In response to the motion to dismiss, plaintiffs acknowledged that *Dralle* bars parental loss of consortium claims where the child's injuries are nonfatal. However, plaintiffs argued that the *Dralle* decision was poorly reasoned and should be reconsidered.

The circuit court granted defendants' motion to dismiss count III and found, pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), that there was no just cause to delay enforcement or appeal of the dismissal. On appeal, plaintiffs urged the appellate court "to criticize the rule pronounced in *Dralle* because the analysis is flawed and inconsistent with existing Illinois law." The appellate court declined the request, noting that "pursuant to controlling authority, plaintiff parents may not bring a claim against defendants for loss of consortium for the nonfatal injuries to their child Dorothy." In a summary order, the appellate court affirmed the circuit court's dismissal of count III of the complaint. No. 2—01—0148 (unpublished order under Supreme Court Rule 23). We allowed plaintiffs' petition for leave to appeal. 177 Ill. 2d R. 315.

ANALYSIS

A motion to dismiss pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 2000)) attacks the legal sufficiency of a complaint by alleging defects on the face of the complaint. *American National Bank & Trust Co. v. City of Chicago*, 192 Ill. 2d 274, 279 (2000); *Weatherman v. Gary-Wheaton Bank*, 186 Ill. 2d 472, 491 (1999). In ruling on a section 2—615 motion, a court must accept as true all well-pleaded facts in the complaint and all reasonable inferences therefrom. *American National Bank*, 192 Ill. 2d at 279; *Weatherman*, 186 Ill. 2d at 491. The critical inquiry is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Jarvis v. South Oak Dodge, Inc.*, 201 Ill. 2d 81, 86 (2002); *Weatherman*, 186 Ill. 2d at 491. We review an order granting a section 2—615 motion to dismiss *de novo*. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003); *Stroger v. Regional Transportation Authority*, 201 Ill. 2d 508, 516 (2002).

In the case at bar, as noted, count III of plaintiffs' complaint seeks damages for loss of filial consortium resulting from their daughter's nonfatal injuries. The same claim was rejected in *Dralle*. Accordingly, both the circuit and the appellate courts held that count III of plaintiffs' complaint failed to state a claim upon which relief may be granted.

Plaintiffs argue, however, that *Dralle* was incorrectly decided, and they urge us to overrule that decision. Plaintiffs' contention that *Dralle* should be overruled implicates *stare decisis*. The doctrine of *stare decisis* "expresses the policy of the courts to stand by precedents and not to disturb settled points." *Neff v. George*, 364 Ill. 306, 308-09 (1936), overruled on other grounds by *Tuthill v. Rendelman*, 387 Ill. 321 (1944). This doctrine "is the means by which courts ensure that the law will not merely change erratically, but will develop in a principled

and intelligible fashion." *Chicago Bar Ass'n v. Illinois State Board of Elections*, 161 Ill. 2d 502, 510 (1994). *Stare decisis* enables both the people and the bar of this state "to rely upon [this court's] decisions with assurance that they will not be lightly overruled." *Moehle v. Chrysler Motors Corp.*, 93 Ill. 2d 299, 304 (1982).

To be sure, *stare decisis* is not an inexorable command. *Chicago Bar Ass'n*, 161 Ill. 2d at 510; *Payne v. Tennessee*, 501 U.S. 808, 842, 115 L. Ed. 2d 720, 746, 111 S. Ct. 2597, 2617 (1991) (Souter, J., concurring). However, we have consistently held that any departure from *stare decisis* must be specially justified (*Chicago Bar Ass'n*, 161 Ill. 2d at 510) and that prior decisions should not be overruled absent "good cause" (*Moehle*, 93 Ill. 2d at 304; *Heimgaertner v. Benjamin Electric Manufacturing Co.*, 6 Ill. 2d 152, 166-67 (1955)) or "compelling reasons" (*Moehle*, 93 Ill. 2d at 304; *People v. Robinson*, 187 Ill. 2d 461, 463-64 (1999)). This court also has recognized that "it will not depart from precedent 'merely because the court is of the opinion that it might decide otherwise were the question a new one.' " *Robinson*, 187 Ill. 2d at 463-64, quoting *Maki v. Frelk*, 40 Ill. 2d 193, 196-97 (1968). In sum, "when a rule of law has once been settled, contravening no statute or constitutional principle, such rule ought to be followed unless it can be shown that serious detriment is thereby likely to arise prejudicial to public interests." *Maki*, 40 Ill. 2d at 196; see also *Heidenreich v. Bremner*, 260 Ill. 439, 450-51 (1913).

In *Dralle*, as in the case at bar, the question was whether the parents of a child born with maladies that included brain damage could recover for loss of their child's society and companionship. According to the complaint in *Dralle*, the child's injuries were caused, in part, by the mother's use during pregnancy of the prescription drug Bendectin. The four-count complaint also alleged negligence on the part of the obstetricians.

In count IV of the *Dralle* complaint, the parents sought compensation from the drug's manufacturer for loss of filial society resulting from their child's injuries. The trial court dismissed count IV for failure to state a claim upon which relief could be granted.

The appellate court reversed the dismissal order, concluding that Illinois recognized a parent's claim for loss of companionship and society resulting from nonfatal injuries to a child. *Dralle*, 124 Ill. 2d at 63. The defendant drug manufacturer appealed, and this court reversed, holding that a parent may not recover for loss of society and companionship of a nonfatally injured child. *Dralle*, 124 Ill. 2d at 71.

In *Bullard v. Barnes*, 102 Ill. 2d 505 (1984), decided prior to *Dralle*, this court held that, in a wrongful-death action, parents are entitled to a presumption of pecuniary injury in the loss of a deceased child's society and companionship.[1] *Bullard*, 102 Ill. 2d at 517. In *Dralle*, the parents argued that it would be a logical extension of *Bullard* to allow recovery for loss of filial society arising from a child's *nonfatal* injuries. The court in *Dralle* rejected this argument, explaining that there is an important distinction between the two types of claims. Where a child is nonfatally injured, the court noted, the child retains his or her own cause of action against the tortfeasor. "Thus, there is no danger that the injury caused by the tortfeasor will go uncompensated, or that similar conduct in the future will be undeterred." *Dralle*, 124 Ill. 2d at 69. By contrast, "an action under the Wrongful Death Act affords the sole remedy for the

---

[1]The court in *Bullard* declined to decide whether the loss-of-society presumption applied to a child who had reached the age of majority. This question was answered affirmatively in *Ballweg v. City of Springfield*, 114 Ill. 2d 107, 120 (1986), which held that parents were entitled to such a presumption in the death of an adult child.

surviving family members." *Dralle*, 124 Ill. 2d at 69. In *Dralle*'s view, it therefore makes sense to allow recovery for loss of filial society in actions under the Wrongful Death Act, but not where the victim survives and retains his or her own cause of action.[2] The court also pointed to a second relevant distinction between *Bullard* and the nonfatal-injury case. In *Bullard*, the decision to allow claims for loss of filial society was based on an already-existing statutory foundation: the wrongful death statute. Where the loss of society results from nonfatal injuries to the child, there is no such statutory foundation. The court in *Dralle* also rejected the argument that our decision in *Dini v. Naiditch*, 20 Ill. 2d 406 (1960), supported the recognition of a filial society claim where injuries are nonfatal. *Dini* held that, just as a husband may claim loss of spousal consortium arising from nonfatal injuries to his wife, so also a wife may make the same claim where her husband is nonfatally injured. Consortium, in this context, "includes, in addition to material services, elements of companionship, felicity and sexual intercourse, all welded into a conceptualistic unity." *Dini*, 20 Ill. 2d at 427. In *Dralle* it was argued that, since this court had already recognized claims for loss of spousal consortium arising from nonfatal injuries, it was but a small step to recognize claims for loss of filial society where the child's injuries were nonfatal. The court in *Dralle* rejected this argument, explaining that "[t]he companionship and society for which recovery is sought [in a filial society claim] is not identical with the spousal claim recognized in *Dini*." *Dralle*, 124 Ill. 2d at 72. *Dralle* asserted that

---

[2]In the case at bar, count I of plaintiffs' complaint, which remains pending before the circuit court, seeks damages for injuries sustained by the Vitros' child, Dorothy. Also pending before the circuit court is count II seeking compensation for the parents' expenses under the Rights of Married Persons Act (750 ILCS 65/15 (West 2000)).

spousal consortium includes elements that "are absent from the parent-child relationship." *Dralle*, 124 Ill. 2d at 72. For this reason, the court "decline[d] to find in the action for spousal consortium a basis for recognizing recovery of loss of filial society." *Dralle*, 124 Ill. 2d at 72.

The court in *Dralle* noted several "policy considerations" that argue against recognition of the new filial society claim, including "the appropriate scope of tort liability" and the difficulty in assessing damages. *Dralle*, 124 Ill. 2d at 69-70. According to *Dralle*, "[t]o recognize claims for loss of society resulting from nonfatal injuries to a child would threaten a considerable enlargement of liability. [Citations.] Grandparents, siblings, and friends suffering similar losses of society and companionship would also seek to bring claims, if recovery were to go unchecked." *Dralle*, 124 Ill. 2d at 70. The *Dralle* court was also concerned with the difficulty in assessing damages. Noting the intangible nature of the loss, *Dralle* asserted that "a trier of fact would find it difficult to distinguish between the child's claim, involving pain and suffering, and the legally distinct but factually similar claim by the parents for loss of the child's society and companionship." *Dralle*, 124 Ill. 2d at 70. This difficulty, the court concluded, would invite duplicate recoveries.

In a special concurrence,[3] Justice Clark criticized the majority's reasoning. While the majority concluded that *Bullard* and *Dini* did not support the recognition of a cause of action for loss of filial society resulting from nonfatal injuries, Justice Clark came to a different conclusion. In Justice Clark's view, these and other decisions of this court, "together with cases on point from

---

[3]Justice Clark agreed with the *Dralle* majority that the parents' claim for loss of filial society was properly dismissed, but he indicated that the case should have been decided on an alternate ground. Accordingly, he concurred in the judgment, but on grounds other than those relied upon by the majority.

other jurisdictions [citations], \*\*\* strongly suggest that we should allow recovery to a parent who, through nonfatal injury, suffers the loss of his child's society." *Dralle*, 124 Ill. 2d at 75-76 (Clark, J., specially concurring). Justice Clark found unpersuasive the policy considerations that the majority cited as arguments against recognizing the new cause of action.

In the case at bar, plaintiffs cite to Justice Clark's special concurrence in arguing that, contrary to the majority's view in *Dralle*, previous decisions such as *Bullard* and *Dini* support the recognition of a parental claim for loss of filial society resulting from nonfatal injuries. According to plaintiffs, recognition of this new filial society claim would be a logical extension of our previous holdings. Any failure to allow such claims, plaintiffs argue, would be inconsistent with this court's previous decisions.

Plaintiffs also take issue with *Dralle*'s "policy considerations," asserting that they are largely illusory. In answer to *Dralle*'s concerns about enlarging liability, plaintiffs point to Justice Clark's assertion in his special concurrence that recognition of the new filial society claim "will not open the floodgates of litigation." *Dralle*, 124 Ill. 2d at 80 (Clark, J., specially concurring). As Justice Clark explained:

> "Loss of society is an injury to familial relationships which has never been applied to relations among friends, or even to noncustodial relatives. Moreover, in the vast majority of cases, the child's injuries will neither be so serious nor so permanent as to support a claim for loss of society." *Dralle*, 124 Ill. 2d at 80 (Clark, J., specially concurring).

With regard to the alleged difficulty in assessing damages, plaintiffs assert, as did Justice Clark, that the same difficulty arises in claims for loss of spousal consortium, which are recognized in Illinois. Plaintiffs note that Illinois juries assess damages in spousal consortium claims

arising from nonfatal injuries (see *Dini*, 20 Ill. 2d at 430), and they argue that there is no reason why a jury could not do the same in parental claims for loss of filial consortium caused by nonfatal injuries.

We agree with plaintiffs that some of what is asserted in *Dralle* in support of the majority's holding does not withstand scrutiny. For example, we do not believe that allowing parents to recover for loss of filial society where injuries are nonfatal would necessarily invite duplicate recoveries. It is true, as *Dralle* notes, that in such situations the child retains his own cause of action against the tortfeasor. However, the child's cause of action for his injuries and the parents' cause of action for loss of society and companionship seek compensation for different harms. The same is true in a spousal consortium context where the injuries are nonfatal. Moreover, any possibility of double recovery could be minimized "by carefully instructing the jury to distinguish between the injuries of the parent and the injuries of the child." See *Dralle*, 124 Ill. 2d at 80 (Clark, J., specially concurring).

We also question *Dralle*'s reliance on the alleged difficulty faced by a jury in assessing damages. *Dralle* points to the intangible nature of the loss; however, intangible losses are encountered in any consortium claim. If Illinois juries are capable of assessing damages in claims for loss of spousal consortium where the injuries are nonfatal, we see no reason why they would face insurmountable difficulties in assessing damages in a similar claim for loss of filial consortium.

Finally, regarding *Dralle*'s concern that liability would be enlarged because grandparents, siblings, and friends would also seek to recover for similar losses of the child's society, we note that this concern could easily be addressed. If we were to recognize a cause of action for loss of filial society resulting from nonfatal injuries, we could simply base it on the uniqueness of the parent-child relationship and limit the holding accordingly.

Even though portions of *Dralle*'s rationale are flawed, we nevertheless agree with an important basis for its holding. In *Dralle*, one of the arguments offered by the parents in support of the new filial society claim was that, because this court had already recognized such a claim in the wrongful-death context (*Bullard v. Barnes,* 102 Ill. 2d 505 (1984)), it would be a logical extension to allow it where the child's injuries were nonfatal. In rejecting this argument, *Dralle* explained, *inter alia,* that the decision in *Bullard* to allow claims for loss of filial society in a wrongful-death action was predicated on *Bullard*'s interpretation of Illinois' Wrongful Death Act. Under this act, damages were allowed for "pecuniary injuries" (Ill. Rev. Stat. 1979, ch. 70, par. 2), and *Bullard* construed this term to include loss of filial society. Thus, "the *statutory* foundation was already in place" (emphasis added) (*Dralle,* 124 Ill. 2d at 69) for recognition of a claim for loss of filial society in a wrongful-death action. No such statutory foundation existed for allowing a filial society cause of action where the injuries were nonfatal. The court thus evinced a preference for a statutory rather than a nonstatutory, or judicially created, basis for the new claim. Implicit in the court's reasoning is the conclusion that it is the legislature which should decide whether this new cause of action should be created. We agree with this conclusion.

This court recently expressed a similar view in *Wakulich v. Mraz,* 203 Ill. 2d 223 (2003). In *Wakulich,* which declined to recognize social host liability for the provision of alcohol to minors, we explained that the legislature was the more appropriate body to address such liability.

" 'The General Assembly, by its very nature, has a superior ability to gather and synthesize data pertinent to the issue. It is free to solicit information and advice from the many public and private organizations that may be impacted. Moreover, it is the only entity with the power to

weigh and properly balance the many competing societal, economic, and policy considerations involved. ***

This court, on the other hand, is ill-equipped to fashion a law on this subject that would best serve the people of Illinois. We can consider only one case at a time and are constrained by the facts before us.' " *Wakulich*, 203 Ill. 2d at 232, quoting *Charles v. Seigfried*, 165 Ill. 2d 482, 493-94 (1995).

With regard to the issue of filial consortium, courts in other jurisdictions have left this determination to the legislature. In Colorado, where claims for loss of filial consortium are authorized under the state's wrongful-death statute, the supreme court declined to extend the filial consortium claim beyond the wrongful-death context, choosing instead to defer to the legislative branch. *Elgin v. Bartlett*, 994 P.2d 411 (Colo. 1999). According to the court in *Elgin*, it is the legislature that is "best suited to reach decisions about the intangibles of consortium loss and the appropriate standards and limitations that should be applicable thereto." *Elgin*, 994 P.2d at 420. The same conclusion was reached by the Supreme Court of Missouri, where filial consortium claims also are recognized under the state's wrongful-death statute. *Powell v. American Motors Corp.*, 834 S.W.2d 184 (Mo. 1992). The court in *Powell* concluded that "if Missouri is to recognize a cause of action for loss of consortium by the children or the parents of an *injured* party, the decision to do so should be made by the legislature and not by this Court." (Emphasis added.) *Powell*, 834 S.W.2d at 185. See also *Boucher v. Dixie Medical Center*, 850 P.2d 1179 (Utah 1992) (declining to extend claims for loss of society and affection beyond the wrongful-death context; deferring instead to the legislature as the appropriate body to determine if such claims should be recognized); *contra, e.g., Shockley v. Prier*, 66 Wis. 2d 394, 225 N.W.2d 495 (Wis. 1975).

The *Elgin, Powell,* and *Boucher* courts teach that the

choice of whether to recognize a new filial society claim is a policy decision that is better left to the legislature. Such a decision inevitably involves navigating between "the competing interests of compensating all those who have been harmed by a tort-feasor and setting rational and workable limits to liability." *Boucher*, 850 P.2d at 1181. With regard to these limits, it is generally acknowledged that while it might be desirable to compensate all those who are harmed by another's wrong, the law must recognize the realities of this world and set reasonable boundaries upon liability. *Cockrum v. Baumgartner*, 95 Ill. 2d 193, 203 (1983), citing *Tobin v. Grossman*, 24 N.Y.2d 609, 619, 249 N.E.2d 419, 424, 301 N.Y.S.2d 554, 561 (1969). Such boundary-setting often is more appropriately left to the legislative branch. *Elgin*, 994 P.2d at 419; *Powell*, 834 S.W.2d at 188-89.

As noted, *Dralle* based its holding in part on the view that it is the legislature that is better suited to decide whether to recognize a cause of action for loss of a nonfatally injured child's society. We believe that, notwithstanding the flaws in other portions of *Dralle*'s rationale, this legislative deference is in itself a valid basis for reaffirming *Dralle*. See *United States v. Powell*, 469 U.S. 57, 64, 83 L. Ed. 2d 461, 468, 105 S. Ct. 471, 476 (1984).

We note that plaintiffs direct our attention to no post-*Dralle* decisions by this court or our appellate court that have criticized or called into doubt the holding in *Dralle*. Indeed, it appears that the opposite is true. See *Doe v. McKay*, 183 Ill. 2d 272 (1998), decided 10 years after *Dralle*, in which this court relied on *Dralle*'s reasoning in rejecting a claim for loss of filial society where the interference with the family relationship was direct, rather than indirect. *Doe*'s reliance on *Dralle* negates any claim that *Dralle* has become unworkable. See *Payne*, 501 U.S. at 827, 115 L. Ed. 2d at 737, 111 S. Ct. at 2609. On the contrary, it would appear that the rule in *Dralle* is now firmly settled. See *Maki*, 40 Ill. 2d at 196.

In the case at bar, the dissent points to our decision in *Seef v. Sutkus*, 145 Ill. 2d 336 (1991), which recognized a parental claim for loss of society of a stillborn child. The dissent asks: "How can we justify sanctioning a damage claim in the death of a stillborn child [citation], whom the parents will never even know, while barring a damage claim in the nonfatal injury of a newborn child, whom the parents will come to know, live with, and suffer with for her or his entire life?" 209 Ill. 2d at 95 (Fitzgerald, J., dissenting, joined by Kilbride and Rarick, JJ.). The answer is that, unlike the case at bar, *Seef* involved the Wrongful Death Act (Ill. Rev. Stat. 1989, ch. 70, par. 1 *et seq.*). In *Seef*, we noted that the Act considers an unborn fetus to be a child, and damages therefore may be recovered for loss of the society of a nearly full-term child who dies at birth. As was the case in *Bullard*, the decision in *Seef* rests on a "statutory foundation." *Dralle*, 124 Ill. 2d at 212. Thus, it is the legislature, not this court, that sanctioned a claim where the infant is stillborn, but did not provide a cause of action in the case of a nonfatally injured newborn.

In sum, plaintiffs in the case at bar have failed to demonstrate good cause (*Heimgaertner*, 6 Ill. 2d at 166-67) or compelling reasons (*Robinson*, 187 Ill. 2d at 463-64) for departing from *stare decisis*. Plaintiffs direct our attention to no post-*Dralle* decisions by this court or our appellate court that have criticized or called into doubt the holding in *Dralle*. Nor has it been shown that upholding *Dralle* would bring about "serious detriment *** prejudicial to public interests." *Maki*, 40 Ill. 2d at 196; *Heidenreich*, 260 Ill. at 450-51.

Moreover, we determined that there is a valid basis for the decision in *Dralle* that is independent of any defects in other portions of *Dralle*'s reasoning. See *Powell*, 469 U.S. at 64, 83 L. Ed. 2d at 468, 105 S. Ct. at 476. This valid basis, as we have indicated, is *Dralle*'s implicit

deference to the legislature as the more appropriate body to decide whether the new filial society claim should be recognized. In view of this sound rationale, as well as plaintiffs' failure to meet the burden required to depart from *stare decisis,* we decline to overrule *Dralle.*

## CONCLUSION

For the foregoing reasons, we adhere to our decision in *Dralle* and decline to enlarge the scope of liability to encompass claims for loss of filial society resulting from nonfatal injuries to a child. We affirm the judgment of the appellate court below, which affirmed the circuit court's dismissal of count III of plaintiffs' complaint.

*Affirmed.*

JUSTICE FITZGERALD, dissenting:

*Stare decisis,* certainly, is an indispensable part of our judicial process. *Prall v. Burckhartt,* 299 Ill. 19, 41 (1921). It promotes evenhanded, predictable, and consistent legal development, fosters reliance on judicial decisions, and contributes to the integrity of the courts. See *Wakulich v. Mraz,* 203 Ill. 2d 223, 230 (2003), quoting *Payne v. Tennessee,* 501 U.S. 808, 827, 115 L. Ed. 2d 720, 736-37, 111 S. Ct. 2597, 2609 (1991). But as the United States Supreme Court has recently reminded us, and the majority today notes, *stare decisis* is not an inexorable command. *Lawrence v. Texas,* 539 U.S. 558, 577, 156 L. Ed. 2d 508, 525, 123 S. Ct. 2472, 2483 (2003), overruling *Bowers v. Hardwick,* 478 U.S. 186, 92 L. Ed. 2d 140, 106 S. Ct. 2841 (1986); 209 Ill. 2d at 82.

"The obligation to follow precedent begins with necessity, and a contrary necessity marks its outer limit. \*\*\* Indeed, the very concept of the rule of law \*\*\* requires such continuity over time that a respect for precedent is, by definition, indispensable. [Citation.] At the other extreme, a different necessity would make itself felt if a prior judicial ruling should come to be seen so clearly as error that its enforcement was for that very reason

doomed." *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 854, 120 L. Ed. 2d 674, 699-700, 112 S. Ct. 2791, 2808 (1992).

That is, *stare decisis* is not so static a concept that it binds our hands to do justice when we have made a mistake. See *Neff v. George*, 364 Ill. 306, 309 (1936); *People v. Mitchell*, 189 Ill. 2d 312, 339 (2000) ("Our most important duty as justices of the Illinois Supreme Court, to which all other considerations are subordinate, is to reach the correct decision under the law"). We have repeatedly stated that a prior case may be overruled only if there are compelling reasons or good cause to do so. See *People v. Robinson*, 187 Ill. 2d 461, 463-64 (1999); *Heimgaertner v. Benjamin Electric Manufacturing Co.*, 6 Ill. 2d 152, 166-67 (1955). Here, there are not only compelling reasons, but also the best cause to abandon *Dralle v. Ruder*, 124 Ill. 2d 61 (1988): it was incorrectly decided.

Though I echo the arguments advanced in Justice Clark's forceful and eloquent special concurrence in *Dralle*, I believe that the resolution of this case can be distilled into a single, simple question: Is there an injury? That is, did Mel and Sabrina Vitro suffer an injury of their own when their daughter Dorothy became brain damaged as a result Dr. Mihelcic's alleged negligent management of Sabrina's labor and delivery?

We have recently reiterated that parents' interest in the companionship, care, custody, and control of their children is perhaps the oldest liberty interest protected by the federal and state constitutions. See *Wickham v. Byrne*, 199 Ill. 2d 309, 316 (2002), citing *Troxel v. Granville*, 530 U.S. 57, 147 L. Ed. 2d 49, 120 S. Ct. 2054 (2000); *Lulay v. Lulay*, 193 Ill. 2d 455, 472 (2000) (" 'The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children' "), quoting *Wisconsin v. Yoder*, 406 U.S. 205, 232, 32 L. Ed. 2d 15, 35, 92 S. Ct.

94

1526, 1541 (1972). Today, parents go to great financial lengths to produce a child—from infertility treatments to childbirth classes. Even normal childbirth has become a more expensive proposition than it was a decade ago, with a marked increase in prenatal doctor visits, prenatal screening for birth defects, and hospital costs. And the emotional toll on parents is greater still—from the decision to conceive to the stress associated with pregnancy. Parents still make these enormous commitments because the satisfaction, companionship, and joy that parents feel in raising a child into a happy, healthy adult is well worth the investment. See *Cockrum v. Baumgartner*, 95 Ill. 2d 193, 200 (1983), quoting *Terrell v. Garcia*, 496 S.W.2d 124, 128 (Tex. Ct. App. 1973). Additionally, though parents support the child in infancy through majority and often beyond, they rely on the child to support them in their later years. In short, parents need children as parents age.

Because a child's society is beyond a doubt valuable, the injury suffered by parents deprived of this society is beyond a doubt real—so real, in fact, that we presume parents suffer pecuniary loss when a child dies. See *Bullard v. Barnes*, 102 Ill. 2d 505, 517 (1984). The difference between losing a child's society to death and losing a child's society to a permanent injury is far more than a "difference which makes no difference." *Dralle*, 124 Ill. 2d at 76 (Clark, J., specially concurring). It is a difference with which we have justified a perverse punishment for parents purportedly fortunate enough to live with a child whose companionship they can no longer fully enjoy.

"[N]o meaningful distinction can be drawn between death and severe injury where the effect on consortium is concerned.

Often death is separated from severe injury by mere fortuity; and it would be anomalous to distinguish between the two when the quality of consortium is negatively affected by both.

'It is easy to see that the loss of a child through his death takes from his parents the society and companionship that is the essence of the lost relationship. But consider the magnitude of the loss of society and companionship that occurs when a normal [child] is suddenly reduced to a blind, nearly deaf, partially paralyzed child with a mental age of three. The parental expectations for the continuation of the family relationship are the same in either case. That the parents still have their son to love and care for is a factor to consider in determining the extent of their loss, but does not negate the loss. They have sustained a genuine loss in the nature of the society and companionship they can anticipate receiving from their son as a consequence of his injuries.

Perhaps the loss of companionship and society experienced by the parents of a child permanently and severely injured ... is in some ways even greater than that suffered by parents of a deceased child. Not only has the normal family relationship been destroyed, as when a child dies, but the parent also is confronted with his loss each time he is with his child and experiences again the child's diminished capacity to give comfort, society and companionship.' " *Frank v. Superior Court*, 150 Ariz. 228, 230-31, 722 P.2d 955, 957-58 (1986), quoting S. Simpson, Note, *The Parental Claim for Loss of Society and Companionship Resulting From the Negligent Injury of a Child: A Proposal for Arizona*, 1980 Ariz. St. L.J. 909, 923.

How can we justify sanctioning a damage claim in the death of a stillborn child (see *Seef v. Sutkus*, 145 Ill. 2d 336, 338 (1991)), whom the parents will never even know, while barring a damage claim in the nonfatal injury of a newborn child, whom the parents will come to know, live with, and suffer with for her or his entire life?

In this case, the Vitros' complaint alleges that Dorothy was rendered permanently brain damaged by Dr. Mihelcic's negligence. Taking these allegations as true, which we must do in the context of a section 2—615 motion to dismiss (see *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 490 (1996)), the Vitros will never be able to enjoy life experiences with Dorothy too numerous to list

that other parents can share with a child who is not disabled. When someone disrupts the parent-child relationship by intentionally or negligently injuring a child and, consequently, injuring the ability of parents to enjoy fully the child's companionship, we should allow the parents an opportunity to present a loss of society claim to a jury. See Ill. Const. 1970, art. I, § 12 ("Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation"); *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 458-59 (1997) (though article I, section 12, does not create a constitutional right to a certain remedy, it expresses a general statement of philosophy); see also *Heck v. Schupp*, 394 Ill. 296, 299-300 (1946) ("Certainly to give a license to one who would disrupt that [family] relationship by tying the hands of injured members of the family, is not only clearly in conflict with [the 'certain remedy' clause] of our State constitution, but appears to us to be contrary to all sense of justice").

In *Dralle*, a majority of this court agreed with the proposition that a nonfatally injured child's own cause of action was an adequate substitute for the parent's own cause of action. See *Dralle*, 124 Ill. 2d at 69. This proposition is as untrue today as it was then. A parent's claim for loss of a nonfatally injured child's society is just that—the parent's claim, completely apart from any claim that the child may have against the tortfeasor. The parent's claim and the child's claim seek compensation for different injuries. The majority's concern in *Dralle* that allowing such a claim would devalue the child's worth is an unfounded and unfair assumption that parents would profess no love or affection for a permanently injured child. Rather, parents could testify that they are unable to share with the injured child life experiences normally shared between parents and a child. The

fact finder would then determine the degree of compensation, if any, the parents should receive for such a loss of society.

In *Dralle*, and again today, a majority of this court sends the implicit, but disturbing, message that spousal relationships deserve more protection than filial relationships. Consequently, the majority elevates the one component of consortium that spousal and filial relationships do not share—sexual intercourse—over the vast number which they do share—emotional support and material services, companionship and felicity, affection and love. See *Dini v. Naiditch*, 20 Ill. 2d 406, 427 (1960); Black's Law Dictionary 304 (7th ed. 1999). In doing this, the majority ignores the fact that at common law, sexual intercourse was not recognized as part of consortium. As Justice Clark noted in his *Dralle* special concurrence, "the consortium action was derived from the right of a master to recover for tortious injury to his servants, since in such a case, the master would suffer a loss of services in addition to whatever loss the servant himself suffered." *Dralle*, 124 Ill. 2d at 76 (Clark, J., specially concurring), citing W. Keeton, Prosser & Keeton on Torts § 125, at 931 (5th ed. 1984). From its inception then, the concept of consortium had nothing to do with sex. Only when the rule expanded to allow a husband to recover the value of his wife's services did that aspect enter the law's view of consortium. If the concept of compensating a loss of consortium was not originally premised on compensating a loss of sexual intercourse, how could *Dralle* have used that as a reason to deny a claim for loss of filial consortium? In fact, if sex was the basis for consortium claims, we would not have allowed parents to recover for the loss of society for the death of their minor child in *Bullard v. Barnes*, 102 Ill. 2d 505 (1984).

"The genius of the common law is its ability to adapt itself to the changing needs of society." *Moran v. Quality*

*Aluminum Casting Co.*, 34 Wis. 2d 542, 551-52, 150 N.W.2d 137, 141 (1967). Our understanding of the concept of consortium has changed over time to include a variety of conjugal and nonconjugal interests. Today, in Illinois, a spouse may recover for the loss of society resulting from the death of the other spouse (see *Elliott v. Willis*, 92 Ill. 2d 530 (1982)); a parent may recover for the loss of society resulting from the death of a stillborn child (see *Seef*, 145 Ill. 2d 336), a minor child (see *Bullard*, 102 Ill. 2d 505), or an adult child (see *Ballweg v. City of Springfield*, 114 Ill. 2d 107 (1986)); a child may recover for the loss of society resulting from the death of a parent (*In re Estate of Keeling*, 133 Ill. App. 3d 226 (1985)); a sibling may recover for the loss of society resulting from the death of another sibling (*In re Estate of Finley*, 151 Ill. 2d 95 (1992)); and a spouse may recover for loss of society resulting from a nonfatal injury to the other spouse (*Dini*, 20 Ill. 2d at 427). A parent may not, however, recover for the loss of society resulting from a nonfatal injury to a child.

This is nonsensical. To borrow a passage from *Bullard*, in view of our earlier decision indicating a similar recovery would have been allowed in a case involving a nonfatal injury to a spouse, "it would be anomalous to *** deny parents this form of recovery." *Bullard*, 102 Ill. 2d at 515. In short, if *Dralle*, which refused to allow a claim for loss of a nonfatally injured child's society, was correctly decided, *Dini*, which allowed a claim for loss of a nonfatally injured spouse's society, was not. If *Dini* was right, *Dralle* was wrong. This court has demonstrated a willingness to extend the common law parameters of consortium and to reevaluate the degree of protection certain relationships deserve. The law in this area developed in a principled and intelligible fashion until *Dralle* cut the evolutionary cord.

Here, the majority asserts that this court reaffirmed

*Dralle* in *Doe v. McKay*, 183 Ill. 2d 272 (1998). 209 Ill. 2d at 90. To the extent that *Doe* extended the rule in *Dralle*, *Doe* too was wrongly decided. I note, however, that *Doe* did not overrule *Dymek v. Nyquist*, 128 Ill. App. 3d 859, 868 (1984), in which, on indistinguishable facts, the appellate court recognized "a cause of action for parental loss of a minor child's society and companionship." Though *Dralle* characterized *Dymek* as involving a claim for direct interference with the parent-child relationship (see *Dralle*, 124 Ill. 2d at 73), a close reading shows that *Dymek* is not so easily cabined. And if *Dymek* survived *Dralle*, and 10 years later *Doe*, the state of our law is currently unclear.

Allowing parents to raise a loss of consortium claim recognizes the fact that parents have a right to enjoy their children's companionship now and in the future, as well as the devastating and irreparable loss that they feel when the quality of their child's companionship diminishes. *Dralle* was not correct when it was decided 15 years ago, and it is not correct today. If, in 15 more years, this court grapples with this issue again and reaches the same conclusion, it will still be wrong.

I dissent.

JUSTICES KILBRIDE and RARICK join in this dissent.