JERRY NORTHCUTT, Plaintiff-Appellant, v. WAYNE CHAPMAN *et al.*, Defendants (Premier Bank of Jacksonville *et al.*, Defendants-Appellees).

Fourth District   No. 4—04—0416

Opinion filed November 30, 2004.

Mario C. Palermo (argued), of Casey, Woodruff & Associates, of Aurora, for appellant.

Forrest G. Keaton (argued), of Rammelkamp, Bradney, Kuster, Keaton, Fritsche & Lindsay, P.C., of Jacksonville, for appellees.

JUSTICE STEIGMANN delivered the opinion of the court:

In this case, we consider whether a bank has a duty to refuse to lend money to a person when (1) the bank knows that the borrower

intends to use the money to purchase a car and (2) the bank knows or should have known that the borrower (a) does not have a valid driver's license and (b) has a record of numerous serious traffic law violations. We hold that a bank has no such duty.

## I. BACKGROUND

In December 2003, plaintiff, Jerry Northcutt, filed a complaint against defendants, Wayne Chapman, Michael Brannan, Premier Bank of Jacksonville, and Pleasant Plains State Bank, a subsidiary of Illinois National Bank. (The record suggests that Premier Bank of Jacksonville was formerly known as Pleasant Plains Bank. We thus hereinafter refer to both defendant banks as simply, "the bank.") Northcutt sought to recover for injuries he suffered when Chapman, who was driving his Ford Escort, failed to yield to oncoming traffic before turning left into a private driveway and struck Northcutt, who was riding a motorcycle.

According to Northcutt's complaint, between 1996 and 1998, Chapman was cited and convicted on four traffic violations. In January 1999, his license was suspended for accruing 3 traffic violations in 12 months. In July 1999, Chapman received another traffic citation and was later convicted. In August 1999, he received another traffic citation and turned his license in as bail. In October 1999, Chapman was cited for failing to drive on the right side of the roadway after he caused an accident that resulted in the death of another driver. He was later convicted on that citation, and his license was suspended. In July 2001, Chapman was cited for driving on a suspended license, and in July 2002, he was convicted of that offense. In May 2002, Brannan sold Chapman the Ford Escort that Chapman was driving when he struck and injured Northcutt.

Northcutt further alleged that (1) Chapman negligently caused his injuries by failing to yield to keep a proper lookout (count I); (2) Brannan negligently entrusted the Ford Escort to Chapman (count II); and (3) the bank negligently entrusted the Ford Escort to Chapman when it loaned Chapman the funds to buy the car and it knew or should have known that Chapman (a) did not have a valid driver's license and (b) was an incompetent driver. (Count III made this allegation against Pleasant Plains State Bank, and count IV made the same allegation against Premier Bank.)

In January and February 2004, the bank filed motions to dismiss counts III and IV of Northcutt's complaint, pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2002)). The motions asserted that Northcutt failed to state a cause of action against the bank because the bank did not have a duty to determine

Chapman's driving competency before loaning him money to purchase the Ford Escort.

In March 2004, the trial court granted the bank's motions to dismiss. In so doing, the court noted that for an entrustment to have occurred, the bank would have had to have a superior right to possess the entrusted article—namely, the Ford Escort. The court also found that it was "speculation that but for the loaning of money, [Chapman] would not have obtained a vehicle."

Later in March 2004, the bank filed a motion seeking (1) an order dismissing counts III and IV with prejudice and (2) a Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) finding that no just reason existed for delaying an appeal. At an April 2004 hearing, Northcutt did not object to the bank's motion, and the trial court entered an order dismissing counts III and IV with prejudice and finding that no just reason existed for delaying appeal of its order.

This appeal followed.

## II. ANALYSIS

### A. Section 2—615 Motions To Dismiss

A section 2—615 motion to dismiss a complaint challenges its legal sufficiency and questions whether its allegations, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81, 806 N.E.2d 632, 634 (2004). A section 2—615 motion admits all well-pleaded facts as true. However, conclusions of law or factual conclusions that are not supported by allegations of specific fact are not admitted. *Provenzale v. Forister*, 318 Ill. App. 3d 869, 878, 743 N.E.2d 676, 683 (2001). We review *de novo* the trial court's ruling on a section 2—615 motion to dismiss. *Vitro*, 209 Ill. 2d at 81, 806 N.E.2d at 634.

### B. Negligent Entrustment

Northcutt first argues that the trial court erred by granting the bank's motion to dismiss counts III and IV of his complaint because the bank's lending money to Chapman for the purpose of buying a car, knowing that Chapman was an unlicensed, reckless, and incompetent driver, constituted negligent entrustment under section 308 of the Restatement (Second) of Torts (Restatement (Second) of Torts § 308 (1965)) (Restatement). We disagree.

■ Section 308 of the Restatement provides as follows:

"It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to

use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others." Restatement (Second) of Torts § 308 (1965).

To prove negligent entrustment, the plaintiff must show that the defendant gave another express or implied permission to use or possess a dangerous article or instrumentality that the defendant knew, or should have known, would likely be used in a manner involving an unreasonable risk of harm. *Evans v. Shannon*, 201 Ill. 2d 424, 434, 776 N.E.2d 1184, 1190 (2002). The two primary considerations in a negligent-entrustment-of-a-vehicle analysis are as follows: (1) whether the owner of the vehicle entrusted it to an incompetent or unfit driver and (2) whether the incompetency was a proximate cause of the plaintiff's injury. *Evans*, 201 Ill. 2d at 434, 776 N.E.2d at 1190.

■Although Northcutt acknowledges that a negligent-entrustment action requires that the actor have control over the dangerous article he entrusts to another, he does not contend that the bank had control over Chapman's car. Instead, he contends that the dangerous article that the bank entrusted to Chapman was the money it loaned him for the purchase of the car. No Illinois precedent exists for concluding that money is a "thing" or "dangerous article" that can be negligently entrusted under section 308 of the Restatement. Moreover, nothing in the language of that section, or the comments thereto, supports such an interpretation. We thus decline to construe section 308 as recognizing a cause of action for the negligent entrustment of money that is used to purchase a dangerous article.

We find support for our interpretation of section 308 in *Zedella v. Gibson*, 165 Ill. 2d 181, 650 N.E.2d 1000 (1995), the only Illinois case that presents an issue closely analogous to the present one. In that case, the plaintiff (Zedella) sought recovery under a negligent-entrustment theory from the father (Robert Gibson) of the driver (Daniel Gibson) of the car in which Zedella was riding when he was injured. *Zedella*, 165 Ill. 2d at 182, 650 N.E.2d at 1001. The record showed that Daniel was 23 years old at the time of the accident and Robert was listed on the title of Daniel's car as a co-owner. Robert had cosigned Daniel's purchase and loan agreement when Daniel bought the car in 1987. Robert did not participate in negotiations for the purchase of the car, did not provide any portion of the down payment and did not make payments on the loan or pay the car insurance. Daniel kept the car in Carbondale, where he was a student, and Robert lived in Wisconsin. *Zedella*, 165 Ill. 2d at 184, 650 N.E.2d at 1001-02.

The Supreme Court of Illinois agreed with Robert that negligent entrustment could not be proved because Robert did not have an exclusive or superior right of control over the car. *Zedella*, 165 Ill. 2d

at 187, 650 N.E.2d at 1003. In so concluding, the court rejected Zedella's arguments that (1) Robert's facilitation of Daniel's purchase of the car by cosigning the purchase-money loan constituted an entrustment and (2) but for Robert's agreement to cosign the loan, Daniel would not have obtained the possession and use of the vehicle. *Zedella*, 165 Ill. 2d at 187-88, 650 N.E.2d at 1003-04.

The *Zedella* court distinguished the facts in that case from those in which a parent could be found liable for negligent entrustment after giving a car to his or her child. The court also distinguished the facts from those in cases in which a negligent entrustment may be found in the sale of a vehicle to an allegedly incompetent driver. *Zedella*, 165 Ill. 2d at 188-89, 650 N.E.2d at 1004. In so doing, the court concluded as follows:

> "In the present case, the defendant father neither gave nor sold the car to his son; Robert merely cosigned the loan that Daniel needed if he was going to buy this particular automobile. We believe that Robert's action in this regard was merely a link in the chain that facilitated Daniel's acquisition, and subsequent possession and use, of the vehicle, but did not itself constitute an entrustment."
> *Zedella*, 165 Ill. 2d at 189, 650 N.E.2d at 1004.

Despite *Zedella*'s explicit rejection of a plaintiff's attempt to extend negligent entrustment to one who facilitates the financing of an automobile purchase, Northcutt contends that *Zedella* does not preclude his claim. Instead, Northcutt asserts that in this case, (1) the bank *knew* that Chapman was going to use the money to buy a car, and if the bank had not loaned him the money, Chapman would not have been able to buy the car and cause the accident and (2) *Zedella* requires us to focus not on the bank's control or possession of the car, but on its knowledge that entrusting a car to Chapman was "foolish." Northcutt's assertions fail to distinguish his case from Zedella's.

Zedella alleged that Robert knew or should have known that Daniel was a dangerous and reckless driver based on Daniel's prior traffic record. *Zedella*, 165 Ill. 2d at 183, 650 N.E.2d at 1001. Just as Robert enabled Daniel to finance his car, the bank in this case enabled Chapman to finance the purchase of the Ford Escort. Robert knew that Daniel was going to use the proceeds of the loan he was cosigning to buy a car, just as the bank in this case knew that Chapman was going to buy a car. Our supreme court was not willing to hold that the cosigner who enabled the purchase of a dangerous article could be liable under a negligent-entrustment theory. We are similarly unwilling to apply that theory when a lending institution enables such a purchase.

### C. Negligent Provision of Chattel

Northcutt next argues that the trial court erred by granting the

bank's motion to dismiss because the bank's lending of money to Chapman to buy the Ford Escort constituted negligent provision of chattel under section 390 of the Restatement. Specifically, he contends that "where funds are earmarked for a specific chattel, a lender can be found to be a supplier of the chattel when it knows the borrower is incompetent to use the chattel and is likely to use the chattel in a manner that endangers others." We disagree.

■ Section 390 of the Restatement provides as follows:

"One who supplies directly or through a third person a chattel for use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them." Restatement (Second) of Torts § 390 (1965).

In particular, Northcutt claims that comment *a* to this section expressly extends liability to "lenders" such as the bank when it states: "The rule stated applies to anyone who supplies a chattel for the use of another. It applies to sellers, lessors, donors[,] or lenders, and to all kinds of bailors, irrespective of whether the bailment is gratuitous or for a consideration." Restatement (Second) of Torts § 390, Comment *a*, at 315 (1965).

■ Northcutt's argument is wholly without merit. Read in context, it is clear that the word "lenders" in comment *a* does not refer to institutions that lend money, like the bank, but to the lenders of *chattel*. Not surprisingly, Northcutt has not cited (nor has our research revealed) any Illinois decision extending section 390 to institutions that lend money later used to purchase chattel. We thus reject his argument.

### D. Common-Law Negligence

■ Last, Northcutt argues that the trial court erred by granting the bank's motion to dismiss because his complaint stated a cause of action under theories of common-law negligence. Specifically, he contends that the bank had a duty to refuse Chapman's loan application based on his driving record. We disagree.

To determine whether a duty exists, courts consider whether a relationship exists between the parties requiring that a legal obligation be imposed upon one for the benefit of the other. The relevant factors in this analysis are (1) the reasonable foreseeability of injury, (2) the likelihood of such injury, (3) the magnitude of guarding against the injury, and (4) the consequences of placing that burden on the defendant. *Evans*, 201 Ill. 2d at 437, 776 N.E.2d at 1191-92.

Northcutt contends that in this case, (1) the foreseeability of injury

was high, (2) the likelihood of injury was high, (3) the magnitude of guarding against the injury is slight, and (4) the consequences of placing the burden on the bank would be (a) minimal and (b) offset by an overall increase in public safety. Northcutt further asserts that he is

> "not seeking a duty on lenders to ascertain a borrower's driving history or even determine whether the driver has a license before lending money. [Instead, he] is only seeking to impose a duty in cases where the lender knows that a prospective borrower is unlicensed and incompetent to drive a vehicle and is seeking to purchase a vehicle."

We decline to recognize the existence of a duty under the circumstances this case presents. The consequences of subjecting lenders to potential liability for the conduct of borrowers who use their borrowed funds to purchase an automobile would be substantial.

Lending institutions are already subject to significant oversight by both the federal and state governments, and the General Assembly is the policy-making body for the State of Illinois. Thus, if the General Assembly were to conclude that the benefits of recognizing such a duty outweigh the drawbacks, it is the appropriate branch of government to establish such a duty. See *Watson v. J.C. Penney Co.*, 237 Ill. App. 3d 976, 978-79, 605 N.E.2d 723, 725 (1992) (noting that the plaintiff should address his argument regarding an "antiquated" rule of law to the legislature).

Accordingly, we conclude that the trial court did not err by granting the bank's motion to dismiss counts III and IV of Northcutt's complaint.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

KNECHT, P.J., and MYERSCOUGH, J., concur.