NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 210216-U

NO. 4-21-0216

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 22, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| JOSEPH WILBORN, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| ROB JEFFREYS, ANTHONY WILLS, SARA | ) | No. 20MR425 |
| QUICK, and JOSHUA SCHOENBECK, | ) | |
|     Defendants-Appellees. | ) | Honorable |
| | ) | Jennifer M. Ascher, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Turner and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not err when it granted defendants' motion to dismiss plaintiff's petition seeking a declaratory judgment, a writ of *certiorari*, and *mandamus* relief and failed to grant plaintiff's motion for a default judgment.

¶ 2    Plaintiff Joseph Wilborn, an inmate in the Illinois Department of Corrections (IDOC), filed a *pro se* petition seeking a declaratory judgment, a writ of *certiorari*, an order of *mandamus*, and damages. The circuit court dismissed the petition on defendants' motion pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)). On appeal, plaintiff contends that the court erred by dismissing his petition and by failing to rule on his motion for default judgment. For the reasons that follow, we affirm.

¶ 3                        I. BACKGROUND

¶ 4    Plaintiff, an inmate at Menard Correctional Center (Menard), filed his petition on June 30, 2020, naming as defendants Rob Jeffreys (the director of IDOC), Anthony Wills

(Menard's warden), Joshua Schoenbeck (a chairperson of Menard's adjustment committee) and Sara Quick (a counselor at Menard). Plaintiff claimed that defendants violated his due process rights by intentionally keeping him in disciplinary segregation past the date on which he claims he should have been released. Specifically, plaintiff alleged that, upon transfer from Pontiac Correctional Center to Menard in April 2018, he was immediately placed in disciplinary segregation; he contends that he was scheduled to be released and returned to the general population on August 28, 2018. However, plaintiff alleges that he "accumulated" two additional years of segregation, extending his release date to August 28, 2020. Plaintiff earned a one-month reduction in his segregation time and calculated his correct release date to be July 28, 2020. Nonetheless, defendants refused to release plaintiff on that date and instead claimed his proper release date was April 1, 2021.

¶ 5        Plaintiff alleged that defendants Quick and Schoenbeck had falsified and destroyed his records pertaining to the time he was required to spend in segregation so that defendants could "illegally [give] plaintiff a falsified [date of] April 1, 2020." Defendants Wills and Jeffreys refused to direct their staff and IDOC to "rectify this issue" and release plaintiff on the correct date. Plaintiff alleged he "made these issues front and center to the defendants verbally and in letters, grievances, [and] emergency grievances requesting the defendants perform their specific ministerial duties." Defendants "refuse[d]" to perform those duties and thereby violated plaintiff's due process rights by keeping him in segregation. Plaintiff set forth the conditions he suffered while in segregation, including being locked behind a "steel door" during the extreme summer heat and being exposed to poor ventilation, rodents, and dust. Among other things, plaintiff claimed he was deprived of contact visits, religious services, grooming products, medical care, commissary, television and radio, and educational programs.

¶ 6        Plaintiff's pleading below was styled as a petition for *mandamus* and declaratory judgment and also as a request for issuance of a common law writ of *certiorari*. He requested that defendants be ordered to do the following: (1) properly calculate the date he was to be released from segregation; (2) gather and stop destroying and falsifying his segregation records; (3) release him from segregation on the correct date of July 28, 2020; (4) place him in "(A) grade" and with the general population upon his release; (5) transfer him to a medium-security prison; and (6) pay "financial damages" in his favor.

¶ 7        In August and September 2020, defendants requested and were given additional time to respond to plaintiff's petition. The most recent request gave defendants until October 12, 2020, to answer or otherwise plead. On October 29, 2020, 17 days after their response was due, defendants requested an additional 21 days to respond. On October 30, 2020, while that request was pending, plaintiff filed a motion for default judgment. Defendants responded and explained that they requested extensions to gather more information and that their counsel required additional time.

¶ 8        On November 17, 2020—before the circuit court ruled on plaintiff's motion for a default judgment or defendants' request for an extension of time—defendants filed a motion to dismiss plaintiff's petition under section 2-615 of the Code. Defendants asserted that plaintiff had no constitutionally protected liberty interest in leaving segregation and that defendants had no ministerial duty to release him back to the general population. The court granted defendants' motion, finding that plaintiff had no liberty interest in leaving segregation and that defendants had no ministerial duty to release plaintiff and return him to the general population.

¶ 9        This appeal followed.

¶ 10                                II. ANALYSIS

¶ 11 We begin our analysis of the issues presented by noting that the record in this matter is far from complete. The record contains no documentation of any disciplinary infraction plaintiff was found to have committed or any resulting discipline imposed upon him. The record also contains no grievances or requests by plaintiff to have his disciplinary segregation time reduced, nor does it contain documentation from any disciplinary or grievance hearings or the administrative review process. As the appellant, it is plaintiff's obligation to provide this court with a complete record. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Plaintiff's status as a *pro se* litigant does not relieve him of this burden. *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 7. The failure to provide a complete record is strictly construed against the appellant. *Foutch*, 99 Ill. 2d at 392. Therefore, any doubts or ambiguities which arise from the incompleteness of the record will be resolved against plaintiff.

¶ 12 Plaintiff contends that the circuit court erred by dismissing his claims for *mandamus* relief, a writ of *certiorari*, and declaratory judgment pursuant to section 2-615 of the Code. A motion to dismiss under section 2-615 of the Code challenges the legal sufficiency of the complaint. *Schloss v. Jumper*, 2014 IL App (4th) 121086, ¶ 20. "A complaint is insufficient if it states mere conclusions of fact or law, and it must, at a minimum, allege facts sufficient to set forth the essential elements of a cause of action." *Razor Capital v. Antaal*, 2012 IL App (2d) 110904, ¶ 27. When reviewing the dismissal of a pleading pursuant to section 2-615 of the Code, "the question is 'whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted.' " *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009) (quoting *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004)). We review a dismissal pursuant to section 2-615 *de novo*. *Id.*

¶ 13 A. Mootness

- 4 -

¶ 14 Before considering the merits of plaintiff's contentions of error, we address defendants' argument that this appeal is moot because plaintiff has already been released from disciplinary segregation and returned to general population; in other words, defendants argue that plaintiff has already received the relief he is seeking. Plaintiff acknowledges that he was released from segregation on March 10, 2021, just prior to this appeal being filed.

¶ 15 Contending that this matter is not moot, plaintiff argues that he advanced various theories below, but the circuit court failed to address them all. However, it is not the particular theory—*mandamus*, declaratory relief, *certiorari*, due process, or equal protection—that is important to the question of mootness; what matters is the *relief* being sought, regardless of the theory for obtaining it. If a case is moot, an appeal cannot result in effective *relief* to the plaintiff. See *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10 (stating a matter is moot if it is impossible for the reviewing court to render effectual relief). "As a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). Consequently, we focus our mootness inquiry not on the plaintiff's various legal theories, but whether success on any of them can provide him with effective relief.

¶ 16 Plaintiff's petition was filed when he was still in disciplinary segregation, and the primary relief he sought was an order of *mandamus* directing defendants to release him on what he claimed was the proper release date: July 28, 2020. An order entered now directing plaintiff's release nearly two years ago would, of course, have no practical effect; this is the essence of mootness. See *Holly v. Montes*, 231 Ill. 2d 153, 157 (2008) (finding plaintiff's complaint for *mandamus* challenging a condition of his mandatory supervised release was moot where that condition was terminated after her complaint was filed).

¶ 17      Plaintiff's petition also sought an order of *mandamus* compelling defendants to stop destroying and falsifying his segregation records and to ensure proper calculation of his release date. It is apparent that plaintiff requested this relief in order to obtain his release from segregation on July 28, 2020, and he makes no argument to the contrary. The orders plaintiff seeks with respect to his records would also not provide plaintiff with effective relief because he has been released from segregation and alleges no ongoing harm.

¶ 18      Likewise, a request for a declaratory judgment requires an " 'actual controversy' " between the parties or a "concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." *Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 374, 375 (1977). The actual controversy requirement cannot be met where the underlying issues of the case are moot. *Id.* Here, plaintiff's request for a declaratory judgment is also moot, as it appears to seek a declaration that he was to be released from disciplinary segregation on July 28, 2020; such a declaration would have no effect when the referenced date has passed and, more importantly, plaintiff has already been released from segregation.

¶ 19      Plaintiff has not argued that an exception to mootness applies. Furthermore, given the deficient record presented in this appeal, we have an insufficient basis on which to determine whether one of the exceptions to mootness might apply to the facts of this case. There are, however, two aspects of the relief sought by plaintiff that are not moot: his request for an order directing defendants to transfer him from Menard to a medium-security prison and his request for "financial relief." Consequently, we examine whether the circuit court properly dismissed any claims which might have afforded such relief.

¶ 20                    B. Recovery of "Financial Damages"

¶ 21 It is still possible to award plaintiff financial damages, so a viable claim for damages would not be moot; the problem for plaintiff, however, is that he has not clearly specified a legal basis for the recovery of such damages. A *mandamus* plaintiff is entitled to recover "damages and costs," but only if a "judgment is entered in favor of the plaintiff." 735 ILCS 5/14-105 (West 2020). Here, no judgment was entered in favor of plaintiff on his *mandamus* action, and none will be entered due to the mootness of the claim. Plaintiff also fails to cite any authority which would permit recovery of damages for a declaratory judgment or a writ of *certiorari*, the other two theories suggested in the caption of plaintiff's petition below. The failure to cite any authority in support of his argument that he has a viable claim for damages results in a forfeiture of the argument on appeal. *People v. Pope*, 2020 IL App (4th) 180773, ¶ 75.

¶ 22 The closest plaintiff comes to articulating a claim for damages is when he states in his reply brief that the "conditions" he complains of "arise to a 42 U.S.C. 1983 civil complaint" and allow for the award of damages. The problem is that plaintiff never invoked section 1983 of the federal Civil Rights Act of 1964 (42 U.S.C. § 1983 (2018)) in his petition below or in his original brief on appeal. An argument raised for the first time in a reply brief and never raised below is forfeited. *Alms v. Peoria County Election Comm'n*, 2022 IL App (4th) 220976, ¶ 31. We will not indulge plaintiff's late effort to portray section 1983 as a basis for recovery of damages, and we therefore find no error in the circuit court's dismissal of plaintiff's claim for damages.

¶ 23                                          C. Transfer

¶ 24 Next, plaintiff contends that the circuit court failed to rule on his request for an order of *mandamus* compelling defendants to transfer plaintiff to a medium-security prison. Any such claim would be without merit because an inmate has no constitutionally protected interest in being housed in or transferred to a particular prison. See *Meachum v. Fano*, 427 U.S. 215, 224

(1976) (stating that the constitution does not "guarantee that [a] convicted prisoner will be placed in any particular prison," and that a "conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons." (Emphasis in original.)). Instead, IDOC has sole discretion regarding the placement and transfer of inmates, and it has the authority to assign prisoners to any of its facilities. *People v. Lego*, 212 Ill. App. 3d 6, 8 (1991). "Courts are not to intervene in matters within the discretion of the IDOC, including the location where inmates are assigned and housed." *Id.* There are additional policy reasons why circuit courts lack authority to order the transfer of an inmate, generally "costs, safety, and authority," and these "policy reasons are sufficiently persuasive to limit a circuit court's authority over inmates within the IDOC." *Id.* at 9.

¶ 25        In this case, plaintiff has no liberty interest in being housed at a particular prison, and the circuit court lacked authority to order his transfer. Therefore, plaintiff's request for an order directing defendants to transfer him to a medium-security prison was properly dismissed.

¶ 26                              D. Plaintiff's Motion for Default Judgment

¶ 27        Finally, plaintiff contends that the circuit court erred when it failed to rule on and grant his motion for a default judgment. We disagree.

¶ 28        "Although the court may enter a default judgment for want of an appearance, a default judgment is a drastic measure, not to be encouraged and to be employed only as a last resort." *Dupree v. Hardy*, 2011 IL App (4th) 100351, ¶ 57. Furthermore, defendants here sought leave for an extension of time in which to answer for various reasons. "[T]he circuit court has broad discretion in setting and extending the deadlines for the filing of pleadings." *Miller v. Consolidated Rail Corp.*, 173 Ill. 2d 252, 260 (1996). In light of Illinois's public policy favoring the resolution of cases on their merits, rather than on procedural grounds, we cannot conclude that

it was an abuse of discretion for the circuit court to allow defendants' late responsive pleading rather than granting plaintiff's motion for default judgment.

¶ 29                                    III. CONCLUSION

¶ 30        For the reasons stated, we affirm the circuit court's judgment.

¶ 31        Affirmed.