ALFRED THOMAS, Plaintiff-Appellant, v. ROBERT SKLODOWSKI *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 1—98—1763

Opinion filed March 23, 1999.—Rehearing denied April 23, 1999.

Scott Bagnall, of Fritzshall & Bagnall, of Chicago, for appellant.

Gregory A. Bedell, of Collins & Bargione, of Chicago, for appellees.

JUSTICE COUSINS delivered the opinion of the court:

The plaintiff, Alfred Thomas, brought a legal malpractice suit alleging that the negligence of his attorney in not giving him notice of

withdrawal led to a default judgment against him in a federal case. The defendants argued that they had exercised reasonable efforts in trying to reach the plaintiff and that the federal court had already decided that issue in their favor by granting the attorney leave to withdraw. Furthermore, they contended, the plaintiff's own negligence was the sole proximate cause of the default judgment. The defendants moved for summary judgment, which the trial court granted.

The plaintiff now appeals, contending that: (1) there were genuine issues of material fact, which should have ruled out summary judgment; (2) the adverse rulings of the federal circuit court did not conclusively decide the issue of whether the defendants made reasonable efforts to contact the plaintiff; and (3) there was insufficient evidence for the court to conclude that the plaintiff was the sole proximate cause of the default.

## BACKGROUND

In 1989, Stanley Scott was shot and killed by four Chicago Housing Authority (CHA) security guards. One of those guards was Alfred Thomas, the plaintiff in this action. The estate of Mr. Scott sued the security guards and their employer, Security Enforcement Services, Inc. (SES), as well as the CHA, for violation of Mr. Scott's civil rights under color of law. 42 U.S.C.A. § 1983 (West 1994); see *Estate of Scott v. Lewis*, No. 90 C 6744 (N.D. Ill. April 26, 1991). Initially, the firm of Bollinger, Ruberry & Garvey represented SES and the four guards. However, the firm withdrew shortly into the proceedings when SES's insurance company went bankrupt.

Defendant Robert Sklodowski, an Illinois attorney, substituted in, entering an appearance for SES and its employees. When Anthony Cairo, the principal shareholder of SES, later informed Sklodowski that SES was about to declare bankruptcy, Sklodowski also decided to terminate his representation and set out to inform his clients that he would be filing a motion to withdraw.

Mr. Sklodowski requested employment applications for the four guards in order to get their addresses. The plaintiff, however, had moved since applying to work at SES. Mr. Sklodowski discovered that the phone number he had been given for the plaintiff was registered to a business. He drove out to the address but was unable to locate the plaintiff there. He then telephoned Mr. Cairo in order to double-check his information. Mr. Cairo told him that the plaintiff's current address was 1008 West Adams. Mr. Cairo says that he got that address from his "secretary or some other employee." The plaintiff's actual address was 1008 East 80th. The summons service list in the federal case shows the East 80th address, while the service list for the motion to withdraw shows the West Adams address.

Sklodowski sent a copy of the motion to his clients by registered mail, but Thomas' green card was returned as unclaimed. Judge Holderman, who was presiding over the federal case, granted the motion to withdraw after being told that Sklodowski had unsuccessfully attempted to reach the plaintiff at his last known address. Five months later, a default judgment was entered against Mr. Thomas for $1 million. The plaintiff contends that, if not for the default, he would have had self-defense as a defense to the claim against him and, further, that Mr. Sklodowski knew this.

Throughout the litigation, the plaintiff never called his attorneys because he thought SES and the insurance company were taking care of the matter. Eleven months after the withdrawal, the plaintiff discovered the default and filed a motion to vacate on the basis that he did not have notice of withdrawal pursuant to Federal Rules of Civil Procedure 60(b). Fed. R. Civ. P. 60(b). The accompanying affidavit was filed with the plaintiff's motion to vacate:

"1. I am a Defendant in the above cause of action.

2. That I was represented by the law firm of Bollinger and Rebury [sic] who were defending my claim on my behalf.

3. That I had no knowledge that Bollinger and Rubury [sic] had withdrawn from the above cause of action."

The motion to vacate was denied.

Plaintiff then filed the instant malpractice suit against Sklodowski and his firm (collectively, defendants), alleging that he lost on default, despite having a defense, because of the defendants' negligent failure to notify him of the withdrawal. At the time of the trial, Mr. Thomas had not yet paid anything on the judgment.

The defendants argued that they had exercised reasonable efforts in trying to reach the plaintiff and that the federal court had already decided that issue in their favor by granting the motion to withdraw and denying the motion to vacate. Furthermore, they contended the plaintiff's negligence in never calling about his suit, rather than any error on the defendants' part, was the proximate cause of his losing on default. The defendants moved for summary judgment, which the trial court granted.

The plaintiff now appeals, contending that: (1) there were genuine issues of material fact, which should have precluded summary judgment on the issue of breach; (2) the adverse rulings of the federal circuit court did not conclusively decide the issue of whether the defendants made reasonable efforts to contact the plaintiff; and (3) there was insufficient evidence for the court to conclude that the plaintiff was the sole proximate cause of the default.

We affirm.

ANALYSIS

■ As the order being appealed is a grant of summary judgment, we review *de novo*. *La Salle National Bank v. Skidmore, Owings & Merrill*, 262 Ill. App. 3d 899, 902, 635 N.E.2d 564, 566 (1994). A court should only grant summary judgment when the pleadings, depositions and admissions show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Zych v. Jones*, 84 Ill. App. 3d 647, 648, 406 N.E.2d 70, 73 (1980).

■ In order to prevail in a legal malpractice action, a plaintiff must show that an attorney-client relationship existed, that a duty arose from that relationship, that the defendant breached that duty, and that he or she suffered actual damages as a proximate result of the breach. *Kramer v. Dirksen*, 296 Ill. App. 3d 819, 821, 695 N.E.2d 1288, 1290 (1998).

■ Even though Sklodowski and Thomas never talked, the defendants do not deny that there was an attorney-client relationship between them, at least at some point, because Sklodowski filed an appearance for Thomas. In a federal court in the Northern District of Illinois, local rule 3.15 applies.

"Once an attorney has filed an appearance pursuant to General Rule 3.14, [he/she] is the attorney of record for the party represented for all purposes incident to the proceeding in which the appearance was filed. The attorney of record may not withdraw, nor may any other attorney file an appearance on behalf of the same party or as a substitute for the attorney of record, without first obtaining leave of court." Local General Rule 3.15 (N.D. Ill. 1996).

■ The parties also agree that an attorney has a duty to provide reasonable notice to his or her client when withdrawing. The attorney-client relationship is terminable by either party, but "an attorney cannot alone and of himself terminate the relation, to his client's injury, and without the client's consent, except upon giving to the client a reasonable notice in order that the latter may be afforded an opportunity to procure other counsel." *Wainwright v. McDonough*, 290 Ill. App. 50, 52, 7 N.E.2d 915, 916 (1937).

I

The parties differ, however, on the question of whether the duty to notify the client of withdrawal had been breached. When the trial court granted summary judgment, it had before it depositions of the plaintiff and the defendant, an affidavit of the plaintiff, the letter of an expert witness, and the affidavit of Anthony Cairo. Both Mr. Cairo and Mr. Sklodowski attested that the incorrect address, 1008 West Adams, was provided by Mr. Cairo. After reviewing the record, an expert witness, Frank McGarr, opined that Sklodowski's efforts to notify the

plaintiff of his withdrawal were reasonable and, thus, fulfilled his duty under *Wainwright. Wainwright v. McDonough*, 290 Ill. App. 50, 52, 7 N.E.2d 915, 916 (1937).

■ In the instant case, the trial court ruled as follows:

> "Counsel, the plaintiff has indicated and agrees there is no genuine issue of material fact. The facts are undisputed, and the question is what is the legal consequence of those facts, and I find that the legal consequence is that the plaintiff has failed to prove malpractice on the part of the defendant. And accordingly, the motion for summary judgment is granted."

According to the plaintiff, the issue presented is "Whether summary disposition is proper in a legal malpractice where issues of fact exist." In our view, there were not issues of *material* fact. The steps that Sklodowski took to notify Thomas were not in dispute. Accordingly, all that remained were legal issues. The legal consequences of the undisputed facts considered by the trial court in the instant case were properly considered by the trial court in the motion for summary judgment. *Bergman v. Hedges*, 111 Ill. App. 2d 35, 38-39, 249 N.E.2d 666, 668 (1969). Based on the materials before the trial court, we hold that the movant was entitled to summary judgment as a matter of law. *Hagy v. McHenry County Conservation District*, 190 Ill. App. 3d 833, 842, 546 N.E.2d 77, 84 (1989).

## II

On appeal, the defendants have also argued that the instant suit constitutes an improper collateral attack on an order of the federal district court. Although the trial court did not discuss the collateral attack issue in its grant of summary judgment, both parties have addressed the issue on appeal and we choose to review this issue.

■ "A collateral attack on a judgment is an attempt to impeach that judgment in an action other than that in which it was rendered." *Buford v. Chief, Park District Police*, 18 Ill. 2d 265, 271, 164 N.E.2d 57, 60 (1960). A collateral attack is to be distinguished from an appeal (*Morgan v. Finley*, 105 Ill. App. 3d 80, 83, 433 N.E.2d 1047, 1049 (1982)), in that a collateral attack is an attempt to impeach or deny effect to an order in some proceeding not provided by law for the express purpose of attacking it. 46 Am. Jur. 2d *Judgments* § 519 (1994). A proper collateral attack on a foreign judgment challenges the validity of the judgment on the basis that the rendering court did not have jurisdiction or the judgment was procured by fraud. *Chicago Park District v. Kenroy, Inc.*, 58 Ill. App. 3d 879, 890, 374 N.E.2d 670, 677, (1978), *aff'd in part, rev'd in part on other grounds*, 78 Ill. 2d 555, 402 N.E.2d 181 (1980).

The defendants argue that the instant action constitutes an

improper collateral attack upon the order of the federal district court. The primary case upon which the defendants rely is *In re Estate of Dorfman*, 138 Ill. App. 3d 646, 486 N.E.2d 310 (1985). In our view, *Dorfman* is not controlling; however, *Dorfman* is instructive.

In *Dorfman*, a criminal suspect awaiting trial in federal court was murdered while out on bail. He had obtained the $1 million in bail money from certain businesses with which he was associated. After Dorfman's death, a dispute ensued as to whether the bail money was to be returned directly to the businesses that provided it or first to Dorfman's estate. The businesses did not wish to proceed against the estate, which had many other creditors, in order to get their money back. The federal district court, based on the local federal criminal rules, decided that the money was to go to the estate.

The businesses brought suit in state court, arguing, among other things, that the federal court had mistakenly applied the local federal criminal rule. The state court of appeals refused to consider that argument, saying that it constituted an improper collateral attack on the judgment of the federal district court. It held that if the plaintiffs thought that the federal court had misinterpreted federal local criminal rules, their proper avenue of relief was to apply to the Seventh Circuit Court of Appeals. *Dorfman*, 138 Ill. App. 3d at 651, 486 N.E.2d at 314.

■ In the instant case, Judge Holderman addressed the issue of the propriety of Mr. Sklodowski's efforts to provide notice in granting his motion to withdraw from the federal case:

> "THE COURT: All right, well, I'm going to grant Mr. Sklodowski's motion as to all defendants. You have made every effort you can, including that with regard to Alfred Thomas, unless you have some other address for Mr. Thomas—
>
> MR. SKLODOWSKI: I have no other address, your honor.
>
> THE COURT: All right, so that motion is granted and your appearance is withdrawn as to those defendants."

Also, lack of notice was the grounds on which Thomas petitioned the court to vacate the default judgment under Rule 60(b), as is evident from the affidavit accompanying the motion. Furthermore, in the complaint filed in the instant case, plaintiff, *inter alia*, alleged:

> "(7) Because of the attorney/client relationship then existing with Plaintiff Alfred Thomas, Defendants had a duty to properly notify Alfred Thomas of their intent to withdraw their representation of him in case number 90 C 6744;
>
> (8) Defendants breached their duty to Alfred Thomas by mailing the notice of their motion to withdraw to Alfred Thomas at the wrong address[.]"

Thus, the issue of notice was an element that was present for consideration in the federal court and now is present in the instant case. In our view, the issue of notice was necessarily decided in Judge Holderman's rulings in the federal case.

Moreover, the defendants in this case are correct that Judge Holderman's order is not vulnerable to collateral attack, since there has been no allegation of fraud or lack of jurisdiction. A judgment may not be collaterally attacked merely on the grounds that it is erroneous. *Pagano v. Rand Materials Handling Equipment Co.*, 249 Ill. App. 3d 995, 999, 621 N.E.2d 26, 28 (1993). Additionally, interlocutory orders in a case are as insusceptible to collateral attack as is the final judgment. *Lewis v. Blumenthal*, 395 Ill. 588, 594, 71 N.E.2d 36, 39 (1947). Any dispute that the plaintiff had with the court's order was properly the subject of an appeal to the Seventh Circuit Court of Appeals rather than a collateral proceeding.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

RAKOWSKI and McNULTY, JJ., concur.