FIFTH DIVISION
February 11, 2010

No. 1-09-1989

| | | |
|---|---|---|
| APOLLO REAL ESTATE INVESTMENT FUND, IV, L.P., a Delaware Limited Partnership, | ) ) ) | |
| Plaintiff-Appellees, | ) ) | Appeal from the |
| v. | ) ) | Circuit Court of Cook County. |
| BRIAN GELBER, GELBER SECURITIES, LLC, an Illinois Limited Liability Company, ICE, LLC, an Illinois Limited Liability Company, GO, LLC, an Illinois Limited Liability Company, JOSEPH NICIFORO, ANNE M. NICIFORO, H. ROBERT HOLMES, LAURENCE WOZNICKI, and GARY SCHEIER, | ) ) ) ) ) ) ) ) | 07 L 5194 The Honorable Bill Taylor, Judge Presiding. |
| Defendants-Appellants. | ) | |

PRESIDING JUSTICE TOOMIN delivered the opinion of the court:

In this appeal we are asked to determine the sufficiency of allegations in an action by a judgment creditor under the Uniform Fraudulent Transfer Act (740 ILCS 160/1 *et seq*. (West 2006)). In 2004, plaintiff, Apollo Real Estate Investment Fund IV, L.P. (Apollo), was assigned an Ohio judgment obtained by its assignor against several corporate entities. Thereafter, Apollo commenced this proceeding to collect money it claims was wrongfully transferred to them by one of those debtor corporations in avoidance of payment for work earlier performed by the judgment creditor. Apollo's amended complaint alleged two counts under the Uniform Fraudulent

1-09-1989

Transfer Act, one count for breach of fiduciary duty, and one count for unjust enrichment. The circuit court's order dismissing the complaint contained a Rule 304(a) finding allowing this appeal to proceed. Apollo appeals only the dismissal of the claims under the Uniform Fraudulent Transfer Act. For the follow reasons, we affirm in part, reverse in part, and remand.

BACKGROUND

The instant proceeding arises from the identical factual background as recited in our earlier opinion answering the certified questions regarding the unjust enrichment claim pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). See *Apollo Real Estate Investment Fund, IV, L.P. v. Gelber*, No. 1-09-1538 (December 31, 2009). Where necessary to resolution of the present appeal, the facts will be repeated, or given in more detail where they were not relevant to the prior appeal but are relevant here.

In 1994, David Lasier founded TWS, Inc., a holding company, and Telecom Wireless Solutions, Inc. (TWS), an Atlanta-based telecommunications company. Under the umbrella of TWS, Lasier also formed other affiliates and subsidiaries to acquire, develop, and operate wireless networks, which included: TWS International, Inc. (TWS International); OPM Auction Company (OPM); Blue Sky Communications, Inc.; Blue Sky Communications, L.L.C.; and Blue Sky International, Ltd. (BSCI). We refer to the corporate entities under the umbrella of TWS collectively as the "TWS companies."

On December 1, 1997, Gelber Securities, Inc. (Gelber Securities), extended a $2.4 million line of credit to TWS under a line of credit agreement, secured by assets of TWS. Gelber Securities was a shareholder of TWS. One of Gelber Securities' principals was defendant Brian

2

Gelber, who was also a member of the board of directors of TWS. Gary Scheier was also on the board of directors of TWS.

On December 31, 1997, Gelber Securities assigned all of its rights and obligations under the line of credit, including its right to repayment, to Ice, LLC, which was formed by Gelber. The members of Ice, LLC, included the managing member Go, LLC, whose members included Gelber and his sons. The other members of Ice, LLC, were Joseph Niciforo, Anne M. Niciforo, H. Robert Holmes, and Laurence Woznicki. TWS subsequently drew almost the entire balance of the $2.4 million credit line.

In 1999, the TWS companies, through OPM, purchased licenses at an FCC auction at a cost of less than $4 million to operate wireless networks in West Virginia. OPM's sole function was to hold the licenses; it did not conduct any business operations. The TWS companies hired an outside company, Divine Tower International Corporation (Divine), to design, develop, and construct the network. Accordingly, in May 1999, Divine and TWS executed a letter of intent providing that Divine would prepare proposals and quotations on the network infrastructure, and that Divine would be utilized to develop and construct the network "for Blue Sky Communications (BSC), through appropriate domestic and international affiliates." On May 27, 1999, Divine and TWS executed a quick-start agreement providing Divine 30 days to identify and prepare reports for network development areas.

On November 29, 1999, Divine and BSCI executed a memorandum of understanding providing that Divine was to fund, develop, construct, and lease operating assets to BSCI in specific geographic regions in West Virginia. The memorandum of understanding stated that

BSCI, "through its affiliated company OPM Auction Company," was the owner of the West Virginia licenses, and that BSCI, through its wholly owned subsidiary, Blue Sky Communications, L.L.C., would manage and operate the mobile telephone services in the designated areas. The memorandum of understanding further provided that Divine agreed "to contract various network design and engineering services, as mutually agreed to, to TWS, Inc., the parent company of BSCI, or its affiliates and sometimes to a team comprised of TWS (or its affiliates), BSCI, and [Divine] engineering staff."

According to Apollo, subsequent to these agreements the TWS companies, including OPM, orally agreed with Divine that the TWS companies would pay Divine $9,750 for Divine's work on each geographical radius for the wireless towers in West Virgina, referred to as a search area ring (SAR). The TWS companies issued Divine 239 SARs, which Divine worked on developing, and as a result the TWS companies owed Divine $2,330,250. Divine could not have worked on these SARs without the agreement of OPM, which held the licenses. The TWS companies, including OPM, orally agreed to compensate Divine for its work on obtaining leased sites at $24,375 per leased site, which amounted to a total of $1,974,375. Further, the TWS companies, including OPM, orally agreed with Divine to pay $29,250 per site for construction, and owed Divine $146,250 for its pre-construction work on five sites.

Nonetheless, on July 21, 2000, the TWS companies informed Divine that they were ceasing all operations relating to the West Virginia network and instructed Divine to stop all work. On September 13, 2000, Divine submitted an invoice to Blue Sky Communications, Inc., for $2,978,500 for the work it performed, with 1.5% monthly interest after 30 days. On

November 20, 2000, the maturity date of the working capital line of credit agreement, TWS owed Ice, LLC, as Gelber Securities' assignee, $2.378 million in principal and accrued interest. TWS and Ice, LLC, subsequently agreed to extend the maturity date to July 31, 2001.

On June 29, 2001, OPM as seller, together with TWS as the sole shareholder, sold the West Virginia licenses to Key Communications, Inc., for approximately $14 million. OPM sent the majority of the sale proceeds to TWS and paid Gelber Securities $2,385,240. Gelber Securites then caused some or all of those funds to be transferred to Ice, LLC, for distribution to its members. OPM received no consideration for this transfer, nor did it retain any proceeds of the sale. Shortly thereafter, OPM dissolved because it had no assets. Neither OPM nor any of the other TWS companies paid Divine.

In 2002, Divine filed suit against the TWS companies in the United States District Court for the Southern District of Ohio, Eastern Division, captioned *DTIC International Corp. v. Blue Sky Communications, Inc.,* No. 2:02-CV-00905. On April 13, 2004, the district court granted Divine's uncontested summary judgment motion and entered judgment in favor of Divine and against all the TWS Companies in the amount of $4,968,351, plus prejudgment interest in the amount of $1,763,019, for a total judgment of $6,641,376. OPM had appeared in that case and vigorously litigated, engaging in extensive discovery, yet failed to defend against Divine's summary judgment motion.

The TWS companies did not pay Divine on the judgment, and Divine subsequently filed a chapter 11 bankruptcy petition. 11 U.S.C. §1101 *et seq*. (2006). Apollo was one of Divine's secured creditors and had a deficiency claim for its prepetition secured claim against Divine for

1-09-1989

loans in the amount of $20,646,438.60. On December 12, 2004, the bankruptcy court approved Divine's plan of liquidation, under which Apollo was assigned Divine's judgment against the TWS companies.

On June 23, 2005, Apollo filed an action in the circuit court of Cook County against defendants and others, captioned *Apollo Real Estate Investment Fund IV, L.P. v. Brian Gelber,* No. 05 L 6954. The case was dismissed for failure to state a claim pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2004)), with leave to amend. Apollo voluntarily dismissed that action and refiled it in this proceeding on May 17, 2007. Apollo asserted two counts for claims for violations of the Illinois Uniform Fraudulent Transfer Act, one count for breach of fiduciary duty, and one count for unjust enrichment, against Brian Gelber, Gelber Securities, LLC, Ice, LLC, and Go, LLC, whom we will refer to collectively as the "Gelber defendants."[1] Pursuant to the Gelber defendants' motion, the circuit court dismissed the complaint on October 24, 2007, and Apollo filed a first amended complaint alleging the same four counts. On February 7, 2008, the court dismissed the first three counts for failure to state a cause of action, but allowed the unjust enrichment claim to stand.[2] The order dismissing the remaining claims contained language that it was immediately appealable pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)).

---

[1] The other named defendants are not parties to this appeal.

[2] The circuit court subsequently certified three questions for our review pertaining to the unjust enrichment claim, which were answered by this court on December 31, 2009, and are not in any event relevant to the instant appeal.

6

ANALYSIS

As noted, the circuit court dismissal of Apollo's Uniform Fraudulent Transfer Act claims was premised on section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2000)). A motion to dismiss brought under section 2-615 tests the legal sufficiency of the complaint. In ruling on a 2-615 motion, a court must accept as true all well-pleaded facts in the complaint and all reasonable inferences therefrom. *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81, 806 N.E.2d 632, 634 (2004), citing *American National Bank & Trust Co. v. City of Chicago*, 192 Ill. 2d 274, 279, 735 N.E.2d 551, 554 (2000), and *Weatherman v. Gary-Wheaton Bank*, 186 Ill. 2d 472, 491, 713 N.E.2d 543, 552 (1999). The critical inquiry is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Vitro*, 209 Ill. 2d at 81, 806 N.E.2d at 634, citing *Jarvis v. South Oak Dodge, Inc.*, 201 Ill. 2d 81, 86, 773 N.E.2d 641, 644 (2002), and *Weatherman*, 186 Ill. 2d at 491, 713 N.E.2d at 552. A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved under the pleadings that will entitle the plaintiff to recover. *American National Bank & Trust Co.*, 192 Ill. 2d at 279, 735 N.E.2d at 554, citing *McGrath v. Fahey*, 126 Ill. 2d 78, 90, 533 N.E.2d 806, 811 (1988). Our standard of review on section 2-615 dismissals is *de novo*. *Vitro*, 209 Ill. 2d at 81, 806 N.E.2d at 634.

The Gelber defendants first maintain that the amended complaint fails to state a cause of action under the Uniform Fraudulent Transfer Act because there is no factual basis supporting a debtor/creditor relationship between Divine and OPM. According to the Gelber defendants,

1-09-1989

OPM was not a party to any of the agreements between Divine and the other corporate entities, which are "separate" corporations, as shown by other inconsistent allegations in the complaint and the exhibits, and therefore there is nothing to connect OPM to the liability of TWS or any of its subsidiary companies. The line of credit agreement was between Gelber Securities and TWS; the letter of intent was between Divine and Blue Sky Communications; the quick-start agreement was between Divine and TWS; and the memorandum of understanding was between Divine and Blue Sky Communications. Also, the final invoice for payment of $2,978,500.00 for work was sent by Divine to Blue Sky Communications, not OPM. The Gelber defendants also maintain that the allegations concerning oral agreements between Divine and OPM for Divine's work are insufficient to establish a debtor-creditor relationship. The Gelber defendants likewise contend that the Ohio judgment cannot be relied upon to show a debtor-creditor relationship. They further maintain they are not bound under *res judicata* or collateral estoppel by the findings underpinning the Ohio judgment, specifically the finding that OPM is one of the judgment debtors.

In order to state a claim under the Uniform Fraudulent Transfer Act, "the factual situation must include a *debtor* who is liable on a *claim* to a *creditor*." *A.P. Properties, Inc. v. Goshinsky*, 186 Ill. 2d 524, 528, 714 N.E.2d 519, 521 (1999). The creditor must show that it has "a right to payment" that it can seek to recover from the debtor. *A.P. Properties, Inc.*, 186 Ill. 2d at 529, 714 N.E.2d at 522, citing 740 ILCS 160/2(c) (West 1996). Under the Uniform Fraudulent Transfer Act, a creditor is "a person who has a claim" and a debtor is "a person who is liable on a claim." 740 ILCS 160/2(d), (f) (West 2000). A claim is "a right to payment, whether or not the

8

right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed. undisputed, legal, equitable, secured, or unsecured." 740 ILCS 160/2(c) (West 2006). Illinois courts treat "claims" fairly broadly:

> "Indeed, a claim is a right to payment. The claim may or may not be reduced to judgment. It may be liquidated or unliquidated. It may be fixed or contingent. It may be matured or unmatured. It may be disputed or undisputed. It may be legal or equitable. It may be secured or unsecured." *Falcon v. Thomas*, 258 Ill. App. 3d 900, 909, 629 N.E.2d 789, 795 (1994).

Under Illinois law, pursuant to the merger doctrine, once a judgment based on a contract is entered, all prior claims from that instrument are merged into the judgment. *In re Werner*, 386 B.R. 684, 694 (N.D. Ill. 2008), citing *Poilevey v. Spivack*, 368 Ill. App. 3d 412, 414, 857 N.E.2d 834, 836 (2006).

The Gelber defendants argue that because they were not parties to the Ohio litigation, they are not bound by that judgment or the findings therein under *res judicata* or collateral estoppel. However, we find the Gelber defendants' argument misplaced. *Res judicata* applies between the same parties if the following elements exist: " '(1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits.' " *Cabrera v. First National Bank of Wheaton*, 324 Ill. App. 3d 85, 92, 753 N.E.2d 1138, 1144-45 (2001), quoting *Conner v. Reinhard*, 847 F.2d 384, 394 (7th Cir. 1988).

First, the Gelber defendants themselves assert that they are not parties to that judgment. Second, and more importantly, they maintain that the cause of action here is entirely different.

However, in attacking the validity of the Ohio judgment, the Gelber defendants misconstrue the nature of a cause of action for fraudulent transfer under the Uniform Fraudulent Transfer Act. The gravamen of the fraudulent transfer counts in this case is the transfer of proceeds from OPM to defendants; it is not a direct action to enforce the Ohio judgment personally against them. An action brought pursuant to the Uniform Fraudulent Transfer Act directly concerns the assets of the judgment debtor and imposes liability based on the value of the transferred assets. *Kennedy v. Four Boys Labor Services, Inc.*, 279 Ill. App. 3d 361, 369, 664 N.E.2d 1088, 1092 (1996), citing 740 ILCS 160/8 (West 1994). "Such an action does not concern personal liability; rather, it attempts to avoid the transfer and seeks the actual assets transferred." *Kennedy*, 279 Ill. App. 3d at 368-69, 664 N.E.2d at 1092-93. *Cf. Sunseri v. Moen*, 382 Ill. App. 3d 821, 888 N.E.2d 713 (2008) (the underlying out-of-state judgment was against the general partnership and thus precluded judgment the creditor from attempting to enforce the judgment against the individual partner's personal assets).

The Uniform Fraudulent Transfer Act further provides that in an action against a transfer under its provisions, a creditor may obtain, among other remedies, "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim" (740 ILCS 160/8(a)(1) (West 2000)). Section 8(b) of this enactment further provides: "If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds." 740 ILCS 160/8(b) (West 2000).

Thus, the cause of action alleged here is not a personal action against defendants to directly enforce the Ohio judgment, nor is Apollo attempting to relitigate the liability for the

Divine work. Apollo does not allege that the Gelber defendants are liable on the underlying claims in the Ohio judgment. Rather, the allegations concerning the Ohio judgment were necessary only to establish the elements of a claim for that judgment and Apollo's status as a judgment creditor under the Uniform Fraudulent Transfer Act. Apollo seeks OPM's assets by way of avoiding the transfer of those assets from OPM to the Gelber defendants as a fraudulent transfer. Here, Apollo is the assignee of a judgment already obtained against all the TWS companies, which include OPM. The allegations concerning the Ohio judgment merely state the requisite elements of a claim and debtor/creditor relationship under the Uniform Fraudulent Transfer Act.

We discern that in ostensibly arguing that Apollo failed to state a cause of action under the Uniform Fraudulent Transfer Act, the Gelber defendants impermissibly have made a collateral attack on the Ohio judgment. A motion to dismiss challenges the action solely from the face of the pleadings. *Grobe v. Hollywood Casino-Aurora, Inc.*, 325 Ill. App. 3d 710, 714, 759 N.E.2d 154, 158 (2001), *appeal denied*, 198 Ill. 2d 590, 766 N.E.2d 239 (2002). In arguing against the Ohio court's explicit finding that OPM is a judgment debtor liable for payment for the Divine work, the Gelber defendants are going beyond the face of the pleadings and are making a collateral attack on the Ohio judgment. " ' "A collateral attack on a judgment is an attempt to impeach that judgment in an action other than that in which it was rendered." ' " *City of Chicago v. Midland Smelting Co.*, 385 Ill. App. 3d 945, 961, 896 N.E.2d 364, 380 (2008), quoting *Thomas v. Sklodowski*, 303 Ill. App. 3d 1028, 1033, 709 N.E.2d 656, 659 (1999), quoting *Buford v. Chief, Park District Police*, 18 Ill. 2d 265, 271, 164 N.E.2d 57, 60 (1960). Although the

11

Gelber defendants attempt to couch their argument as a defense against the application of *res judicata* and collateral estoppel, their collateral attack on the Ohio judgment is transparent. Courts should be liberal in recognizing a movant's collateral attack on a judgment, even if such attack is mislabeled. *Gay v. Frey*, 388 Ill. App. 3d 827, 832, 905 N.E.2d 333, 337 (2009).

Under the collateral attack doctrine, a final judgment rendered by a court of competent jurisdiction may only be challenged through direct appeal or procedure allowed by statute and remains binding on the parties until it is reversed through such a proceeding. *Board of Trustees of Community College District No. 508 v. Rosewell*, 262 Ill. App. 3d 938, 961, 635 N.E.2d 413, 431-32 (1992), citing *Malone v. Cosentino*, 99 Ill. 2d 29, 32-33, 457 N.E.2d 395, 397 (1983). The doctrine may be invoked whenever the effect of an action is to modify the former adjudication. *Board of Trustees*, 262 Ill. App. 3d at 961, 635 N.E.2d at 432. A foreign judgment is not subject to collateral attack except on the grounds of fraud in the procurement of the judgment or lack of jurisdiction in the rendering court. *Holy Cross Hospital, Inc. v. Rossi*, 171 Ill. App. 3d 637, 639, 525 N.E.2d 1235, 1236 (1988). Further, only fraud which prevents a court from acquiring jurisdiction, as distinguished from fraud which occurred after the court obtained jurisdiction, renders the foreign judgment void. *Rossi*, 171 Ill. App. 3d at 639, 525 N.E.2d at 1236.

Further, as to a foreign judgment, " '[u]nder the doctrine of full faith and credit, the forum court will not rehear a case on its merits because the judgment is *res judicata*.' " *Firstar Bank Milwaukee, NA v. Cole*, 287 Ill. App. 3d 381, 383, 678 N.E.2d 668, 670 (1997), quoting *All Seasons Industries, Inc. v. Gregory*, 174 Ill. App. 3d 700, 703, 529 N.E.2d 25, 26 (1988). "A

12

primary aim of the full faith and credit clause is to avoid the relitigation in other states of issues adjudicated to final resolution." *Doctor's Associates, Inc. v. Duree*, 319 Ill. App. 3d 1032, 1046, 745 N.E.2d 1270, 1282-83 (2001).

Here it is clear there can be no collateral attack on the Ohio judgment. There are no jurisdictional defects with the Ohio judgment apparent on the face of the complaint. The Gelber defendants do not question the jurisdiction of the Ohio court which rendered the Divine judgment. Thus, they cannot make a collateral attack on that judgment establishing that OPM is liable as a judgment debtor. Apollo is therefore entitled to rely on the validity of the Ohio judgment as the claim on which its creditor status is based, and is entitled to rely on the judgment finding that OPM is liable as a debtor. The Gelber defendants' assertion that "[t]he Ohio [j]udgment does not and cannot be used to prove anything in this litigation" is meritless, as the judgment most certainly established OPM's liability as a debtor to Divine, and now a judgment debtor to Apollo as Divine's assignee. For us to inquire into the underlying claims in the Ohio judgment would upset the well-founded principle of comity in jurisprudence.[3]

---

[3] We note that even if we were to address the issue of whether OPM is liable for the Divine work, the letter of intent and memorandum of understanding executed between Divine and Blue Sky Communications specifically also encompassed affiliates of TWS, which included OPM. Thus, the conclusion that OPM was liable, along with the other TWS affiliates, could easily be drawn directly from the agreements attached to Apollo's amended complaint. Also, the agreements specifically contemplated further agreements between the other corporate affiliates and Divine and did not contain an integration clause, and therefore would allow consideration of

Interestingly, while contending that they were not parties to the Ohio judgment, the Gelber defendants fail to cite to any authority which would then give them grounds to challenge that judgment. Moreover, we discern that defendants may not have standing to challenge the Ohio judgment because that judgment solely affected the interests of other corporate entities. See *Schranz v. I.L. Grossman, Inc.*, 90 Ill. App. 3d 507, 512, 412 N.E.2d 1378, 1384 (1980). The Gelber defendants cannot have it both ways; they cannot claim they have no connection to the Ohio judgment and at the same time attack the finding that OPM is liable in that judgment in an effort to bar the cause of action here.

Indeed, there is authority that collateral estoppel may apply directly to the Gelber defendants warranting a finding that they are in law bound by the findings in the Ohio judgment. Collateral estoppel applies when a party, or someone in privity with a party, participates in two separate and consecutive cases arising on different causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389-90, 757 N.E.2d 471, 477 (2001). There is no generally prevailing definition of "privity" that the court can apply to all cases; rather, determining privity requires careful consideration of the circumstances of each case. *Hayes v. State Teacher Certification Board*, 359 Ill. App. 3d 1153, 1164, 835 N.E.2d 146, 156-57 (2005). "Privity" exists between a party to

Divine's alleged oral agreements with OPM. Thus, the facts here are distinguishable from *Main Bank v. Baker*, 86 Ill. 2d 188, 427 N.E.2d 94 (1981) (consideration of oral agreement barred by parol evidence rule where the lease contained an integration clause).

action and a nonparty, as will allow the nonparty to be bound by judgment on action, only if those parties adequately represent the same legal interests. *Holzer v. Motorola Lighting, Inc.*, 295 Ill. App. 3d 963, 972, 693 N.E.2d 446, 453 (1998).

Corporations and their officers, directors, and shareholders are in a category of relationships that may establish privity, for purposes of *res judicata* or collateral estoppel. See *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 559-60, 914 N.E.2d 577, 589 (2009). "Where *** a closely held corporation is a party to litigation, those stockholders who are in complete control of the corporation are, in effect, in complete control of the litigation, and where *** no one other than the parties to the suit have an interest in the subject matter, they are bound by the decision regardless of the technical distinctions involved in the use of the term 'privity.'" *Cohen v. Schlossberg*, 17 Ill. App. 2d 320, 329, 150 N.E.2d 218, 223 (1958).

We recognize that collateral estoppel has been applied in situations involving corporations and shareholders and directors. In *C.I.S., Inc. v. Kann*, 76 Ill. App. 3d 109, 394 N.E.2d 916 (1979), the court affirmed an entry of summary judgment and applied collateral estoppel concerning a finding from prior litigation based on the relationship between the defendant corporation and the individual corporate officer defendant. *C.I.S., Inc.*, 76 Ill. App. 3d at 111, 394 N.E.2d at 918. The defendants in *C.I.S.* maintained they were to be directors of the corporation and that there was a joint venture, but the president of the corporation asserted they were merely its employees and that the bonuses they had each taken from C.I.S. funds were unauthorized. *C.I.S., Inc.*, 76 Ill. App. 3d at 110, 394 N.E.2d at 917. In the earlier action by the

15

defendants to prevent their removal from the business, the trial court found that the bonuses taken by the defendants were unauthorized and that there was no evidence of a joint venture. *C.I.S., Inc.*, 76 Ill. App. 3d at 110, 394 N.E.2d at 917. While that case was pending on appeal, the corporation commenced the *C.I.S.* action against the defendants, seeking recovery of the bonuses. The defendants argued that collateral estoppel based on the previous case should not apply because the parties were not the same, as the president of C.I.S. was the party in the previous litigation, whereas the corporation itself was the party in the *C.I.S.* litigation. *C.I.S., Inc.*, 76 Ill. App. 3d at 110, 394 N.E.2d at 917. The court disagreed, finding that the president of C.I.S. owned or controlled the corporation's stock at the time of the prior litigation.

In the case *sub judice*, the Gelber defendants are also officers, shareholders, and/or directors of the TWS companies that are the judgment debtors in the Ohio judgment. Gelber Securities was a shareholder of TWS. One of Gelber Securities' principals was Brian Gelber, who was a member of the board of directors of TWS. Thus, collateral estoppel may indeed also apply to defendants in the case before us. However, it is unnecessary to make this determination here, as we have found that the allegations concerning the Ohio judgment are sufficient to state the requisite elements of a claim and debtor/creditor relationship under the Uniform Fraudulent Transfer Act, and that the Gelber defendants cannot collaterally attack the fact that OPM is a judgment debtor, nor the fact that the Ohio judgment is a valid claim.

Having determined that there is a debtor/creditor relationship based on the Ohio judgment, we must next determine whether the complaint sufficiently alleges the remaining elements of a cause of action under the Uniform Fraudulent Transfer Act. There are two

provisions for liability under this enactment:  section 5 (740 ILCS 160/5 (West 2000)), where the creditor's claim arose either before or after the transfer; and section 6, where the creditor's claim arose only before the transfer (740 ILCS 160/6 (West 2000)).  In count I, Apollo alleged violations under section 5(a)(1).  In count II, Apollo alleged violations of sections 5(a)(2) and 6(a).  In both counts, Apollo incorporated all the factual allegations concerning both the claim for Divine's work for the TWS companies and the Ohio judgment.

As noted, pursuant to the merger doctrine, the only "claim" is the claim on the Ohio judgment.  The Ohio judgment was rendered after the fraudulent transfer occurred, and thus only section 5 of the Uniform Fraudulent Transfer Act applies.  See 740 ILCS 160/5(a) (West 2000).  A cause of action under section 6 is not properly maintainable.  We thus affirm the dismissal of that portion of count II alleging an action under Uniform Fraudulent Transfer Act section 6.  Therefore, we need not address the parties' arguments concerning the sufficiency of the allegations under that section 6.

We now turn to the sufficiency of the allegations under section 5.  Section 5 provides the following:

> "(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>>
>> (2) without receiving a reasonably equivalent value in exchange for the

transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." 740 ILCS 160/5 (West 2000).

A cause of action under section 5(a)(1) is for actual fraud, often referred to as "fraud in fact." To prevail on this cause of action, a party must prove that the transfers were made with the actual intent to hinder, delay, or defraud the creditors. *In re Hennings Feed & Crop Care*, 365 B.R. 868, 874 (C. D. Ill. 2007) (hereafter *Stone*), citing *In re Martin*, 145 B.R. 933, 946 (1992), and *In re Knippen*, 355 B.R. 710, 721 (2006). The Uniform Fraudulent Transfer Act sets forth 11 factors in making a determination as to actual intent: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was

1-09-1989

incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. 740 ILCS 160/5(b) (West 2000). See also *Kennedy v. Four Boys Labor Services, Inc.*, 279 Ill. App. 3d 361, 664 N.E.2d 1088 (1996).

Constructive fraud or "fraud in law" is the cause of action set forth in section 5(a)(2) of the Uniform Fraudulent Transfer Act. Constructive fraud occurs when (1) a voluntary gift is made, (2) there is an existing or contemplated indebtedness against the debtor, and (3) the debtor has failed to retain sufficient property to pay the indebtedness. *In re Martin*, 145 B.R. 933, 946 (N.D. Ill. 1992), citing *In re Aluminum Mills Corp.*, 132 B.R. 869, 888 (N.D. Ill. 1991), and *Gendron v. Chicago & North Western Transportation Co.*, 139 Ill. 2d 422, 437, 564 N.E.2d 1207, 1214 (1990). "Establishing fraud in law does not require proof of actual intent to defraud." *Stone*, 365 B.R. at 874, citing *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997); *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995). "Rather, transfers made for less than reasonably equivalent value, leaving a debtor unable to meet its obligations, are deemed or presumed to be fraudulent." *Stone*, 365 B.R. at 874, citing *In re Zeigler*, 320 B.R. 362, 374 (N.D. Ill. 2005). The test set forth by the Illinois Supreme Court to determine the validity of a transfer under the Uniform Fraudulent Transfer Act is " 'whether or not it directly tended to or did impair the rights of creditors.... A donor may make a conveyance with the most upright intentions, and yet, if the transfer hinders, delays, or defrauds his creditors, it may be set aside as fraudulent.' " *In re Martin*, 145 B.R. at 947, quoting *Birney v. Solomon*, 348 Ill. 410, 414-15, 181 N.E. 318, 320 (1932).

We reject the Gelber defendants' assertion that the complaint is factually insufficient

19

under Illinois' pleading standards. Though Illinois is a fact-pleading jurisdiction that requires a plaintiff to present a legally and factually sufficient complaint, the plaintiff is not required to prove his or her case at the pleading stage. *Weis v. State Farm Mutual Automobile Insurance Co.*, 333 Ill. App. 3d 402, 405, 776 N.E.2d 309, 311 (2002). Rather, a plaintiff must allege sufficient facts to state all the elements of the asserted cause of action. *Weis*, 333 Ill. App. 3d at 405, 776 N.E.2d at 311. Apollo correctly underscores the legal standard on a section 2-615 motion to dismiss; such dismissal is appropriate only when no set of facts would entitle the plaintiff to recover. See *Mackie v. Vaughn Chapter-Paralyzed Veterans of America, Inc.*, 354 Ill. App. 3d 731, 739, 820 N.E.2d 1042, 1049 (2004), *appeal denied*, 214 Ill. 2d 535, 830 N.E.2d 3 (2005).

In its amended complaint Apollo alleged that: (1) the transfer from OPM to Gelber Securities was to an insider, as Gelber Securities was a shareholder of TWS, OPM's parent corporation, and its principal was Brian Gelber, who was also a director of TWS; (2) the transfer was of substantially all of OPM's assets; (3) there was no consideration for the transfer to Gelber Securities as it was not a creditor of OPM; (4) OPM became insolvent and dissolved shortly after the transfer without paying its creditors; (5) the transfer was made after Divine issued its invoice and that invoice was not paid; and (6) the assets were transferred to Gelber Securities and thereafter distributed to the Gelber defendants, who were also insiders.

Apollo's allegations are sufficient to state a cause of action for actual fraud under section 5(a)(1), and clearly state many of the factors provided in section 5(b), including that the transfer was to an insider, the transfer was of substantially all the debtor's assets, the value of the

consideration received by the debtor was not reasonably equivalent to the assets transferred, the debtor was insolvent or became insolvent shortly after the transfer was made, the transfer occurred after Divine's invoice was received, and the assets were transferred eventually to insiders. See 740 ILCS 160/5(b) (West 2000).

Under the Uniform Fraudulent Transfer Act, an "insider" of a corporation includes the following if the debtor is a corporation: a director of the debtor; an officer of the debtor; a person in control of the debtor; a partnership in which the debtor is a general partner; a general partner in a partnership; or a relative of a general partner, director, officer, or person in control of the debtor. 740 ILCS 160/2(g)(2) (West 2000). An insider of a debtor corporation also includes "an affiliate, or an insider of an affiliate as if the affiliate were the debtor." 740 ILCS 160/2(g)(4) (West 2000).

According to Apollo's allegations, and by the Gelber defendants' own admission, OPM is an affiliate of TWS. Defendant Gelber Securities was a shareholder of TWS. One of Gelber Securities' principals was defendant Gelber, who was a member of the board of directors of TWS. TWS was the sole shareholder of OPM. Though OPM is a separate entity, it is clear from the definitions under the Uniform Fraudulent Transfer Act that the allegations in the complaint one can conclude TWS and OPM are affiliates, and that the Gelber defendants were insiders.

Apollo's allegations also state a cause of action for constructive fraud under section 5(a)(2) where it clearly alleged that the assets were transferred by OPM without receiving reasonably equivalent consideration, and which depleted the assets of OPM such that it could not, and did not, pay the Divine invoice. See 740 ILCS 160/5(a)(2) (West 2000).

An unbroken line of precedent establishes that similar allegations sufficiently state causes of action under sections 5(a)(1) and 5(a)(2) of the Uniform Fraudulent Transfer Act. In *In re Phillips*, 379 B.R. 765 (N.D. Ill. 2007), the court held that a transfer of money by a chapter 7 bankruptcy debtor to pay the mortgage on his daughter's home constituted actual and constructive fraud under both sections 5(a)(1) and (a)(2) because the transfer was for the benefit of an insider, made shortly after a substantial judgment had been entered against the debtor, and was for little or no consideration. *Brown*, 379 B.R. at 782-83. Also, the transfers either were made when the debtor was insolvent or caused the debtor to become insolvent. *Brown*, 379 B.R. at 782.

In *Star Insurance Co. v. Risk Marketing Group, Inc.*, 507 F. Supp. 2d 942 (N.D. Ill. 2007), *aff'd,* 561 F.3d 656 (7th Cir. 2009), the plaintiff insurers, after having obtained a judgment in a different district court against the defendant corporations, brought a proceeding to enforce the judgment and set aside fraudulent transfers. The court held that the insurers met their burden to show fraud under the Uniform Fraudulent Transfer Act where the same individual was the president of the transferee corporation and controlled the defendant corporations. *Star Insurance Co.*, 507 F. Supp. 2d at 947. Further, the transfers were made shortly before the defendants became insolvent. *Star Insurance Co.*, 507 F. Supp. 2d at 947.

In *In re H. King & Associates*, 295 B.R. 246 (N.D. Ill. 2003) (hereafter *Krol*), the court held that the bankruptcy trustee established the requisite elements under both sections 5(a)(1) and 5(a)(2) where, at the time the debtor corporation made voluntary transfers to debtor's president, the debtor corporation had already incurred a judgment debt in the approximate sum of $700,000. *Krol*, 295 B.R. at 290. Further, the transfers were made without receiving a reasonably

equivalent value, and there was no evidence adduced to show that the transfer was for a lien. Also, after the transfers, the debtor failed to retain sufficient property to pay its debts to other creditors. *Krol*, 295 B.R. at 290.

In *Wachovia Securities, LLC v. Neuhauser*, 528 F. Supp. 2d 834 (N.D. Ill. 2007), margin accounts were opened by individual defendants and related companies for the purpose of acquiring a substantial amount of a particular stock. When that stock plummeted, the margin accounts became due and the bank brought several counts against the defendants under the Illinois Uniform Fraudulent Transfer Act for transferring the company's assets to the individual defendants, making it impossible for the bank to collect on its $2.9 million margin call. After the company incurred its margin debt, it received an extension of an existing line of credit from a separate company in exchange for a security interest in all of its assets, despite the fact that the company was in default. The subsidiary was owned by an individual defendant's family trust and the individual defendant was its only employee. *Wachovia Securities*, 528 F. Supp. 2d at 859. The court denied the summary judgment motions of three of the individual defendants as to both actual fraud and constructive fraud under sections 5(a)(1) and (2) and 6(a)(1) of the Illinois Uniform Fraudulent Transfer Act. The court held there was sufficient evidence to create a genuine issue of material fact that the transfer of the property was made to an insider to defraud the bank, as both corporations were owned by the same individuals, and the transfer was of stock from a company they owned to another company they owned. *Wachovia Securities*, 528 F. Supp. 2d at 858. There was also evidence that the transaction was without reasonably equivalent value, and there was no evidence as to what, if any, consideration was received for the transfer.

1-09-1989

*Wachovia Securities*, 528 F. Supp. 2d at 859-60. Thus, summary judgment was denied as to the actual and constructive fraud claims.

We determine that Apollo has sufficiently stated claims under sections 5(a)(1) and 5(a)(2) of the Uniform Fraudulent Transfer Act in counts I and II, and thus dismissal of these claims was improper. Apollo has stated sufficient facts alleging a debtor/creditor relationship and a claim based on the Ohio judgment. Apollo has further alleged sufficient facts for the remaining elements under both sections 5(a)(1) and 5(a)(2) to state claims for actual and constructive fraud under the Uniform Fraudulent Transfer Act. As such, we reverse the dismissal of count I and reverse dismissal of the cause of action under section 5(a)(2) in count II.

CONCLUSION

For the foregoing reasons, we affirm in part, reverse in part, and remand to the circuit court for further proceedings.

Affirmed in part and reversed in part; cause remanded.

FITZGERALD SMITH and HOWSE, JJ., concur.

REPORTER OF DECISIONS – ILLINOIS APPELLATE COURT
(Front Sheet to be Attached to Each Case)

| Please Use Following Form: | |
|---|---|
| Complete TITLE of Case | APOLLO REAL ESTATE INVESTMENT FUND, IV, L.P., a Delaware limited partnership, Plaintiff-Appellees, <br><br> v. <br><br> BRIAN GELBER, GELBER SECURITIES, LLC, an Illinois limited liability company, ICE, LLC, an Illinois limited liability company, GO, LLC, an Illinois limited liability company, JOSEPH NICIFORO, ANNE M. NICIFORO, H. ROBERT HOLMES, LAURENCE WOZNICKI, and GARY SCHEIER, <br> Defendants-Appellants. |
| Docket No. COURT Opinion Filed | No. 1-09-1989 <br> Appellate Court of Illinois <br> First District, FIFTH Division <br><br> February 11, 2010 <br> (Give month, day and year) |
| JUSTICES | JUSTICE TOOMIN delivered the opinion of the court: <br><br> FITZGERALD SMITH and HOWSE, JJ.  concur [s] <br><br> dissent[s] |
| APPEAL from the Circuit Ct. of Cook County, Chancery Div. | Lower Court and Trial Judge(s) in form indicated in the margin: <br><br> The Honorable Bill Taylor, Judge Presiding <br><br><br> Indicate if attorney represents APPELLANTS or APPELLEES and include |
| For APPELLANTS, John Doe, of Chicago. <br><br> For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel) <br><br> Also add attorneys for third-party appellants or appellees. | attorneys of counsel.  Indicate the word NONE if not represented. <br><br> Attorneys for Defendants-Appellants:     James E. Dahl <br> Patrick K. Dahl <br> DAHL & BONADIES <br> 225 West Washington, Suite 1640 <br> Chicago, IL 60606 <br> 312/641-3245 <br><br> Attorneys for Plaintiff-Appellee:     Kevin Keating <br> KEATING & SHURE, LTD <br> 55 West Monroe Street, Suite 1600 <br> Chicago, IL 60603 <br> 312/201-8585 |

1-09-1989